BISHOP vs. YOUNG.

In an attachment suit against a person who has contracted to perform work for another, the employer is not subject to garnishment if there is nothing absolutely due from him to the contractor, and it is uncertain whether anything will become due.

APPEAL from the Circuit Court for *Milwaukee* County.

On the 21st of December, 1859, *Bishop* commenced an action in said circuit court against one Grant, and caused a writ of attachment to be issued against his property. On the 30th of the same month, *Young* was summoned, as garnishee of said Grant, to appear before a court commissioner on the 5th of January following, and answer touching his liability as such garnishee. On his examination he answered in substance as follows: "In July, 1859, Grant contracted to build for me a block on certain lots in Milwaukee, to be completed on the 1st of January, 1860. It has not been completed. The contract price was $31,000, of which $10,700 was to be paid in cash as the work progressed. I was to give him also real estate as follows: two lots on the corner of sixth and Clybourn streets for $6,000; a lot fronting on Hill street, for $1,800; and a lot on the corner of Michigan and Jackson streets for $2,500. I was also to give him two mortgages for $3,000 each, payable in five years, and two notes for $2,000 each, payable respectively in twelve and eighteen months from the completion of the building. The deeds and mortgages were to be given while the work was progressing. I have given deeds or bonds for deeds on the whole of said real estate above described; gave, two or three months ago,

a deed running to Greene & Watkins, for one-third of the two lots on sixth and Clybourn streets; executed two deeds not yet delivered on the balance of those lots, except 25 feet, one of which was made to one Littell, and the other to one of his workmen; have given a bond for the whole of said lots; have also given Grant a bond for the lot on the corner of Michigan and Jackson streets, and one for the lot on Hill street; these bonds were given five or six weeks ago; in order to keep the work on, I agreed to give Grant bonds for workmen, to satisfy them; had made oral promises to workmen previously that they should have their pay, and subsequently gave bonds or deeds to fulfill those promises; the bonds were all given at the same time, and were made directly to Grant, at his request. There are $4,000 deferred payments, being the two notes for $2,000 each. I have not given deeds for the lots on Michigan street and Hill street, or the 25 feet of the lots on the corner of sixth and Clybourn streets. According to the original contract I was to give all the bonds or deeds for the land previous to the completion of the work, and whenever they were called for. I gave one of the $3,000 mortgages some three months ago; the other has not been given. Both mortgages were to be given during the progress of the work, whenever sufficient work was done, and they were called for, I have paid all the cash I was to pay, and a great deal more; had paid Grant up to December 22, 1859, $28,965.66; since that time have paid various persons for materials &c., some $709.72. Grant bought these goods with instructions from me, and I was to pay for them. He has charge of the whole work, and I pay the hands and furnish the materials under a subsequent agreement with him. That agreement was made some five or six weeks ago; it was not in writing; the terms of the original contract were not changed at the time of the new agreement; the original contract is so far changed that I am to furnish materials and pay the men until the work is done; there has been no agreement or understanding that the original contract

should be considered at an end; I have not waived it; no waiving, giving up or stopping it; nothing was said about it either way. When we made the new agreement there was no estimate of what had been done, but there was an estimate of what was to be done, which amounted to $6,000 or $7,000. The new agreement was made a few days before I gave the bonds. The bonds were given in pursuance of the original contract. They were entitled to them at the time. They would have had the deeds from me previous to this time, but they were [indebted] to the contractors in their employ. The payments I may have to make [for materials and work] may exceed the [balance unpaid on] the contract; I cannot tell. Grant is under bonds to pay me $20 a day as damages for the hall from December 1, 1859, until finished, and the stores at the rate I could rent them for from December, 1859, until completion; and the same was to apply to all other portions of the building from the first of January, [1860,] until completed."

The plaintiff afterwards notified the garnishee that he was not satisfied with his answer, and elected to have a trial on the issue thus formed. On the 12th of the same month, judgment was rendered in the principal suit against Grant for $962.20. On the trial of the garnishee suit, in June, 1861, the plaintiff put in evidence the written contract between Grant and *Young*, which contained the following provisions, among others: " Basement story on, Washington street, and stores on the same street, and concert hall, with all staircases, to be finished ready for use December 14, 1859; the remaining part of the building to be finished complete for use January 1, 1860. If either or all of the stores and offices shall not be finished by the time mentioned, the contractor to pay such price as the owner may have leased the said stores for. If the concert hall is not finished at the time mentioned, the contractor to pay at the rate of twenty dollars per day as stipulated damages."
Mr. Grant, as a witness for the plaintiff, said in substance: "Many changes were made from the writing in putting up the

building, at the request of Mr. *Young.* The instrument in evidence was our principal guide. The value of the extra work and changes was between five and six thousand dollars. Mr. *Young* has paid me at different times, since the 30th of December, 1859, $11,235.16. Some of this was paid in cash, and some in notes in paying for groceries and clothing for the men, and for lumber and brick, which went into the building; $1,000 of it was paid in real estate, deeded in pursuance of bonds he had given me in November, 1859, and which were assigned by me about that time. The amount received before the 30th of December, 1859, is $19,622. The land on Hill street and on Michigan street has not been conveyed to me, and is not included in this amount. On the day last mentioned no deed or bond for a deed of the lots on Hill street and the corner of Michigan and Jackson streets had been given me. I found these bonds four or five months after that in Waldo & Ody's safe." Upon cross-examination he said: "On the 30th of December, 1859, about two-thirds of the work on the building had been completed. I have no memoranda by which I can show positively the amount. I finished work upon the building about the middle of May, 1860. The stores were finished about the first of January; some were finished later, but all, I think, in January. The hall was finished some time in March or April; passages, &c., in May. The changes made a difference of time from January to May, I think. My brother told me he put the bonds in Waldo & Ody's safe; they did law business for me; they gave me the bonds when I asked for them." The defendant was called by the plaintiff as a witness, and testified that previous to the service of the notice of garnishment he had made payments to Grant amounting to $28,081.92, of which $10,300 was paid in real estate, including the lots on Hill and Michigan streets.—The plaintiff having rested, the court, on the defendant's motion, rendered a judgment of nonsuit; from which the plaintiff appealed.

*D. G. Hooker,* for appellant, contended that the garnishment

in this case reached the entire amount of the garnishee's liability upon the building contract then remaining unpaid, *whether due or to become due.* Sec. 35, chap. 130, R. S. 2. That if this were not so, still, the contract being payable in installments, the garnishment would hold all the installments then due and unpaid (*Daily v. Jordan,* 2 Cush., 390; *Harris v. Aiken,* 3 Pick., 1; *Smith v. Davis,* 1 Wis., 447); that those installments being payable in real estate and mortgages, and bonds for deeds having been given for a portion of the real estate, the garnishment would reach all the real estate not actually conveyed, by secs. 44 and 53, chap. 130, R. S. The garnishee's answer states that the deed and mortgages were to be given while the work was progressing; that it would take at that time about $4,000 to complete the work; that there were $4,000 of deferred payments, being the two notes of $2,000 each; and that "the bonds were given in pursuance of the original contract; they were entitled to them at the time." These statements show that the contract was payable in installments, and that the real estate installments were due when the garnishee proceedings were commenced. Of the $10,300 worth of real estate which was to be used in making payments, a deed had been given for only $2,000 worth, viz: one-third of the two lots on the corner of Sixth and Clybourn streets. Grant moreover testifies in substance that no deed or bond for a deed had been delivered to him for either the lot on Michigan street or that on Hill street; and that the bonds executed for those lots were made in his name, and had not been disposed of by him.

*Peter Yates,* for respondent:

At the time the defendant was garnisheed, Grant had not performed his contract in respect to either the amount of work to be performed or the time specified for its performance, and had no cause of action against the defendant. Our garnishee proceedings are in a great measure borrowed from the trustee process of Massachusetts. "In order to charge one as a trus-

tee, it is necessary that the principal have a cause of action against him, or that the trustee have personal chattels in his possession capable of being seized on execution.   *Morrill v. Brown*, 15 Pick., 176–7 ; 7 Mass., 438 ; 21 Vt., 301.   2. The $4,000 for which notes were to be given, was payable only upon the completion of the entire job, and was not attachable. 3 Mass., 68 ; 4 id., 235 ; 12 Pick., 22, 25 ; 7 id., 120, 122 ; 11 id., 101, 105 ; 36 Me., 201 ; 42 id., 132 ; *Daily v. Jordan*, 2 Cush., 390 ; *Harris v. Aiken*, 3 Pick., 1 ; *Kettle v. Harvey*, 21 Vt., 301 ; *Boardman v. Cushing*, 12 N. H., 111, 118.

*By the Court*, COLE, J.   Upon the facts disclosed in this case, we do not think the garnishee was liable.   Grant had not performed his contract at the time of service of process, and consequently it was impossible to say how much would be due him.   It appears that he had been paid all that he was entitled to on the contract, if not more.   Whether he would be entitled to anything further depended upon the time and manner of his completing the building.   If he did not finish the stores and offices by the first of January, 1860, he was to pay *Young* such sum as the latter might have leased them for ; while for the hall he was to pay at the rate of twenty dollars a day as stipulated damages, after the building was to be completed. With such stipulations in the contract, it was of course impossible to say what would become due him.   What would be the amount coming to *Young* in consequence of the delay in performing the contract?   Who could say that the damages arising from the delay in finishing the building might not amount to more than the part of the contract price which would remain unpaid ?   And Grant might abandon the work altogether, in which event nothing would be due him.   Our statute says that the garnishee, from the day of service of the garnishee process, shall stand liable to the plaintiff in attachment to the amount of the property, moneys and credits in his hands, and debts due or to become due from him to the de-

fendant. Sec. 35, chap. 130. The "property, moneys and credits" here spoken of, are such as are in the hands of the garnishee, which belong to the principal debtor. And the "debts due or to become due," evidently relates to such as the garnishee owes absolutely, though payable in the future. We have no idea the statute intended to include in the language "to become due," a debt which might possibly become due upon the performance of a contract by the defendant in attachment. As already said, Grant was doing work under a special contract, and whether anything would be due him upon it depended upon the time and manner he performed it. There was nothing absolutely due him at the time of service of garnishee process upon the respondent. And whether anything would ever become due depended on a contingency.

We therefore think the garnishee was rightfully discharged. See *Williams v. Androscoggin & Kennebec R. R. Co.*, 36 Me. R., 201; *Harris v. Aiken et al.*, 3 Pick., 1; *Kettle v. Harvey et al.*, 21 Vt., 301.

The judgment of the circuit court is affirmed.