ALLIED TECHNOLOGY, INC., Unsecured Creditors' Committee on Behalf of Allied Technology, Inc., 1200 Talbott Tower, Dayton, Ohio 45402, Plaintiff,

v.

R.B. BRUNEMANN & SONS, INC., Successor in interest to Brunemann Realty Co., Inc., 11120 Kenwood Road, Cincinnati, Ohio 45242, Defendant.

In the Matter of ALLIED TECHNOLOGY, INC. an Ohio Corporation, Debtor.

Adv. No. 3–82–0522.
Bankruptcy No. 3–80–00669.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 7, 1982.

486

Peter J. Donahue, Dayton, Ohio, for debtor.

Dennis J. Patterson, Dayton, Ohio, for Creditors' Committee.

William A. Rogers, Jr. and Daniel T. Harman, Dayton, Ohio, for P.O.B., Inc.

Katherine Butts Warwick, Dayton, Ohio, for Allied Technology, Inc.

C. Francis Barrett, Cincinnati, Ohio, Attorneys for R.B. Brunemann & Sons, Inc.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court for consolidated consideration of Debtor-Lessee's Application for Assumption of Lease, the Unsecured Creditors' Committee's Application to subordinate any assumed obligations to the claims of unsecured creditors, and Defendant-Lessor's Motion to Dismiss a Complaint filed by Debtor alleging that Lessor violated the automatic stay of 11 U.S.C. § 362.

Debtor's instant Application for Assumption of Lease was filed on 17 February 1982. The Court heard the Application on 1 March 1982, at which time the parties indicated that the then anticipated Application of the Unsecured Creditors' Committee (filed on 3 March 1982), could be decided based upon the record then before the Court without the necessity of a separate hearing. The parties have submitted a series of memoranda debating the legal issues raised within the Applications.

On 12 August 1982, Debtor filed a Complaint alleging violation of the automatic stay by an eviction action instituted on 22 July 1982, despite the pendency of this Court's decision on the aforementioned Applications. The eviction action, commenced in the Hamilton County (Ohio) Municipal Court, is presently pending and seeks to evict the assignee of the subject lease, and also requests money damages against both Debtor (as Lessee-Assignor) and the assignee, the party presently in possession. Defendant-Lessor filed the instant Motion to Dismiss on 2 September 1982, and all interested parties have submitted legal memoranda regarding the issues raised therein.

The Court held a pretrial conference on 20 September 1982. At the pretrial, the parties agreed that the Motion to Dismiss could be consolidated with the Applications to enable joint decision based upon consolidation of the records, reserving for later resolution only the allegation of fraudulent conduct alleged in the Complaint and, within the discretion of the Court, any other matters within the Complaint deemed not yet ripe for decision. The following decision is therefore based upon the respective records and memoranda of the parties, and the evidence adduced at the hearing.

### FINDINGS OF FACT

This case basically concerns the assumption of a lease by a debtor-lessee-assignor. The controversy stems from the facts that the lease provides for monthly payments considerably below fair market value and that prior to the Petition filing Debtor as-

signed the leasehold without specific reservation of any reversionary interest. The pertinent facts are not in dispute, and the case is essentially presented to the Court for resolution of legal issues.

Debtor-Lessee entered into the subject lease agreement with Brunemann Realty Co., Inc. on 18 July 1968. R.B. Brunemann & Sons, Inc. (hereinafter Lessor) is the successor in interest to Brunemann Realty Co., Inc. Relevant to the case at bar, the lease contains the following "express conditions":

. . . . .

2. Without prior written consent of the Landlord, which consent shall not be unreasonably withheld, the term hereby demised shall not be assigned or underlet, nor shall any right or interest thereto or therein be conferred on or vested in any one other than the Tenant. . . . Tenant reserves the right to occupy said premises and sublet to any of its subsidiaries. . . . Tenant shall remain liable for all obligations of Tenant hereunder notwithstanding any such assignment or subletting.

. . . . .

7. Tenant shall upon termination of this lease for any reason whatsoever surrender [the premises] . . . to the Landlord. . . . The Tenant shall pay to the Landlord the cost to the Landlord of repairing any damage to the building caused by the Tenant. . . .

. . . . .

17. The Tenant further agrees that his covenants and agreements herein contained shall be deemed conditions as well as covenants, and that if default be made in the payment of the rent herein reserved as the same shall come due, or if the Tenant shall fail to observe any of the other covenants and agreements herein contained on the Tenant's part to be performed, and the Tenant shall fail to cure such default or breach within 20 days after notice thereof is given by the Landlord to the Tenant, then it shall be lawful for the Landlord, at its option, either: (first) to enter and repossess said premises and to remove all persons and property therefrom; and for the purpose of such entry and repossession the Tenant hereby waives any notice required by law or otherwise to vacate the premises, and thereupon this lease and everything herein contained on the Landlord's behalf to be done and performed shall cease, determine and be void; or (second) as agent of the Tenant to enter and repossess said premises and to remove all persons and property therefrom and to re-rent said premises and apply all rentals received to the amounts due from the Tenant under this lease, and to expenses incurred in connection with such re-renting, the Tenant in such event to be liable for such expense when incurred, and the installments of rent and other charges as they become due, less the amount of any rents so collected by the Landlord. The Landlord shall be under no obligation in re-renting the premises to give priority to the rental of said space over other vacant space in the building.

The Tenant further agrees that for the more effectual securing to the Landlord of the rent herein reserved, the filing of any petition under the bankruptcy laws or insolvency laws, or in any reorganization proceedings, by or against the Tenant, the making of an assignment for the benefit of creditors, or the appointment of a receiver for the property of the Tenant, shall be deemed to constitute a breach of this lease, and thereupon, ipso facto, and without entry or other action by the Landlord, this lease shall at the option of Landlord terminate, and notwithstanding any other provisions of this lease, the Landlord shall forthwith, upon such termination, be entitled to recover damages for such breach in an amount equal to the amount of the rent reserved in this lease for the balance of the term hereof, less the fair rental value of the premises for the residue of said term.

The Landlord may also restrain any threatened breach of the covenant to observe the conditions of this lease, or of any covenant therein contained, but the mention herein of any particular remedy shall not preclude the Landlord from any

remedy it might have either at Law or in equity; nor shall consent to one act, which would otherwise be a violation, nor shall waiver of, or redress for, one violation, either of covenant or condition, prevent a subsequent act which would originally have constituted a violation from having all the force and effect of an original violation.

.        .        .        .        .

19a  Tenant shall have the option to extend this lease under the same terms and conditions contained herein for an additional five (5) years, beginning at the expiration of the original term hereof, provided that the Tenant shall not then be in default herein and provided further that Tenant shall have given Landlord at least six (6) months' notice in writing prior to the expiration of the then existing term hereof of such exercise of its option.  If the said first option to extend this lease is exercised then Tenant shall have a second option to extend this lease for an additional five (5) years under the same terms and conditions, except that there shall be no further option to extend beyond said second five (5) year term. 20.   It is agreed that the provisions hereof shall bind and inure to the legal representatives, successors and assigns, of the parties hereto . . . .

As permitted in Condition # 2, the leasehold was subsequently occupied by the "P.O.B. Sealants Division" of Debtor.

In early 1980, Debtor contemplated selling its P.O.B. Sealants Division to P.O.B., Inc. (hereinafter Assignee).  Assignee's offer to purchase Debtor's P.O.B. Sealant Division, however, was contingent upon successful assignment of the lease to Assignee, and the assignment itself constituted part of Debtor's consideration in the proposed sales contract.

On 25 February 1980, Debtor-Lessee-Assignor and Assignee entered into an Assignment of Lease as part of the arrangements consummating Debtor's simultaneous sale of its P.O.B. Sealant Division.  The Lessor consented in writing on 22 February 1980 to the assignment of the lease to the Assignee, and the assignment is valid and enforceable in accordance with terms of the lease.  Lessor's consent was specifically conditioned upon Lessee's continued liability under the lease, as required by Condition 2 of the Lease.  It is further undisputed that the instant assignment is a true assignment (as distinguished from a sublease) without any reversionary interest or right of reentry retained by Debtor-Assignor.  (See generally, 49 Am.Jur.2d Landlord and Tenant §§ 391 *et seq.;* and 33 O.Jur.2d Landlord and Tenant §§ 239 *et seq.*)

Relevant to the instant proceeding, the Assignment of Lease contains the following "covenants":

1.   Seller-[Debtor-Assignor] does hereby assign, transfer and set over unto [Assignee] all of its rights, title and interest in and to said lease. . . .

.        .        .        .        .

3.   [Assignor] covenants and agrees that said lease is in full force and effect and that Seller exercised its option to renew said lease for a five (5) year term in 1978 and that there remains the right to further renew said lease for an additional term of five (5) years after the expiration of the initial term of five (5) years provided that the tenant is not in default thereunder all as set forth in Paragraph 19a [of the lease];  . . . that the [Assignor] has performed all the covenants and conditions and obligations on its part to be performed pursuant to said lease up to the date of closing [25 February 1980] . . .; and that [Assignor] is not in violation of any of the covenants or terms of said lease at the date of closing.  In the event that any sums are due and payable arising out of the failure of the Seller to perform the covenants under said lease prior to the date of closing regardless of whether or not demand has been made therefor by [Lessor] to [Assignor], the [Assignor] shall promptly remit any said sums to the [Assignee] on demand therefor.

.        .        .        .        .

5. Buyer by the execution of this assignment, hereby excuses and releases Seller from any further liability under the lease for obligations arising after the 25 day of February, 1980.

Assignor has been in possession of the leasehold since the date of the assignment; and it is undisputed that Assignor has, to date, fully performed.

Debtor filed its Chapter 11 Petition in this Court on 18 March 1980. Debtor scheduled Lessor as an unsecured creditor in the amount of $2,083.32, based upon an anticipated rent arrearage as discussed below. Lessor subsequently filed a Proof of Claim with the Court on 11 August 1981 listing Lessor's claim as an "unliquidated" claim based upon a "breach" of the subject lease.

Prior to the Petition filing, Debtor made rent payments by two checks which Lessor had not presented for payment as of the date of the Petition filing. The drawee-payor bank subsequently dishonored these checks because of the intervening Petition filing. Note 11 U.S.C. §§ 542(a) and 544(a). The Court notes that the date of presentment is not of record. In July 1980, however, Assignee (presumably promptly) reimbursed Lessor for the dishonored checks. Assignee was subsequently reimbursed for this payment by Debtor in Possession pursuant to this Court's approval of Assignee's Proof of Claim for reimbursement. The Court also notes that, to date, rent payments have never again been in arrears, though Lessor has refused Assignee's tender of rent payments (apparently, though the record is not clear) subsequent to the Notice to Leave Premises, discussed below. These payments have instead been escrowed "to preserve Lessor's eviction rights."

Debtor filed an Application to assume the lease on 27 August 1980. A ruling on this Application, however, was reserved by Court order dated 4 November 1980 to permit the Court to entertain the Application jointly with two adversarial proceedings involving common questions of fact.

The first of these adversarial proceedings, commenced on 7 October 1980 and numbered 3–80–0578, essentially concerned an attempt by the Unsecured Creditors' Committee to set aside the sale of Debtor's P.O.B. Sealant Division, inclusive of the instant assignment. The Court notes that this matter has subsequently been resolved within Debtor's Plan of Reorganization, as discussed below, and has accordingly been dismissed. See this Court's Order of 18 November 1982.

The other adversarial proceeding, commenced on 28 October 1980 and numbered 3–80–0626, involved a request by Debtor-Lessee-Assignor that the Court stay any action by Lessor to evict Assignee. This adversarial proceeding was filed in response to Lessor's dissatisfaction with the unfavorable terms of the lease, manifested throughout Lessor's involvement with Assignee. For example, when Debtor requested Lessor's consent to the Assignment, Lessor's initial response (later retracted by Lessor's written request as discussed above) was to withhold consent, as follows:

On behalf of our client, R.B. Brunemann & Sons, Inc., the successor in interest to Brunemann Realty Co., Inc., by merger, we are herewith responding to your letter dated February 1, 1980 which requested our client's consent to your company's assignment of the subject lease to Mr. Michael J. Dooley.

Our client respectfully declines to consent to this assignment.

The payments of the monthly installments of rent have typically been late. Your company has periodically been in default throughout the term and is presently in default. During the original ten year term of the lease, only 119 of these 120 monthly payments were made. The rent for June, 1979 has never been received. The September, 1979 rent was received one month late. The rent for November and December, 1979 and for January, 1980 was not received until February, 1980. The rent checks for August, 1979 and February, 1980 were just tendered last week, and our client is refusing to accept these checks and is returning these checks to your company. Further-

more, the contract rent under this lease is substantially below the market rent. As stated above, even this below market rent has been paid late or not paid at all. Therefore, in view of the foregoing, our client is fully justified in refusing to consent to the assignment of this lease.

Lessor's point of view was made more explicit by a letter to Assignee dated 28 July 1980 (which prompted Adversary Proceeding No. 3–80–0626) intimating that Lessor anticipated an eviction action against Assignee, as follows:

This letter is to set forth the position of my client, R.B. Brunemann & Sons, Inc. [Lessor], with regard to the above-captioned matter.

R.B. Brunnemann & Sons, Inc. had entered into a written lease with Allied Technology, Inc. [Debtor] which provided for monthly installments of rent of $1,041.67, which is equivalent to $12,500.04 a year. Based upon the 13,103 square feet of space in the subject building at 1100 Kenwood Road, the rent per square foot is less than $1.00 per year. The current market rent for comparable space is $3.50 to $4.00 a square foot. From the foregoing, it is obvious that Brunemann has a very unfavorable lease and certainly did not like the idea of having to consent to the assignment to P.O.B., Inc. If Brunemann could have avoided consent to the assignment, it would have done so. However, the assignment was made subject to the continuing liabilities of Allied Technology, Inc. under the lease, and the only basis for P.O.B., Inc.'s occupancy of this real estate is by virtue of the lease agreement.

Since the lease has an unequivocal provision concerning automatic termination for a bankruptcy proceeding, it is our position that the lease has been terminated. If your client, P.O.B., Inc., wishes to maintain the position ... that only a default by P.O.B., Inc. can give rise to a basis for evicting P.O.B., Inc., then it would be our position that P.O.B., Inc. is a tenant on a month-to-month basis which can be evicted on 30 day's notice. (How can it be said that Allied Technolo-

gy, Inc. has no further obligations to the lessor under the lease agreement without saying that P.O.B., Inc. is not claiming any interest in the subject real estate under the Allied Technology, Inc. lease?) However, in accordance with [Assignee's] apparent desire to settle the matter, we would be willing to avoid litigation and reach a compromise agreement. Under such an agreement, Brunemann would be willing to accept a rental rate at the low end of the current market rental rate (that is, $3.50 per square foot per year), with a provision for increase based upon the consumer price index, would be willing to enter into a written lease with a 5 year term, would pay the insurance, and would expect the tenant to be responsible for the real estate taxes, utilities, and repairs.

If [Assignee] is willing to settle on these terms, please let me know.

The Court notes that the above-quoted letter indicates that Lessor was not dissatisfied with Assignee as a tenant nor with Assignee's performance as of the date of the letter, but instead was only dissatisfied with the unfavorable lease terms. This indication is further evidenced by Lessor's earlier "Notice to Leave the Premises," dated 11 June 1980, which requested "surrender" of the premises on the single ground of a "breach of Lease ... by Lessee's filing Bankruptcy Petition in violation of paragraph 17 [effecting a forfeiture of the leasehold upon the filing in Bankruptcy Court]...." The Court also notes that both Lessor's letter and Notice to Leave Premises do not allege any irregularities in rent payments as a basis for eviction, notice of which, along with an opportunity to cure, would have been required by Condition # 17 of the lease prior to an eviction on the basis of rent arrearage. The resulting adversarial proceeding requesting that the Court stay any attempts by Lessor to evict Assignee is no longer pending before the Court pursuant to the parties' arrangements within Debtor's Plan of Reorganization to dismiss the adversary "with prejudice," as discussed below. See also this

Court's order dated 3 March 1982 within Adversary 3–80–0626.

As alluded, all matters regarding the subject lease remained dormant pending the parties' negotiations leading to Debtor's Plan of Reorganization, confirmed by Order of the Court dated 17 August 1981.[1] Relevant to the instant proceeding, the Plan contains the following "Articles":

. . . . .

## ARTICLE V

### *Rejection of Executory Contracts*

All executory contracts, stock options, warranty obligations, and unexpired leases of Allied entered into prior to March 18, 1980 and not assumed in writing prior to confirmation of the Plan shall be deemed rejected upon confirmation of the Plan, except that Allied will renew its Motion to affirm its obligations, if any, under a lease previously assigned to P.O.B., Inc. Allied shall have the right to file motions for the rejection of such executory contracts, warranty obligations or unexpired leases at any time prior to confirmation of the Plan. Any person or entity claiming rights under a rejected executory contract, warranty obligations or unexpired lease shall have until August 10, 1981 to file a proof of claim in this case or such additional time as the court, before that date may allow.

## ARTICLE VI

### *Provisions for the Retention, Enforcement, Settlement or Adjustment of Claims*

Except as noted below, confirmation of the Plan shall constitute settlement of all litigation commenced in connection with this Chapter 11 action, which litigation shall be dismissed with prejudice by the Reorganization Court. The adversary proceeding concerning the lease which

had been previously assigned by Allied to P.O.B., Inc. shall be heard after confirmation among Allied, the lessor and P.O.B., Inc. All rights other than those granted under this Plan shall be waived by acceptance and confirmation of the Plan. All claims, causes of action, demands and rights shall merge in Allied upon confirmation and any exercise of rights shall be Allied's decision and Allied will assume the defense of any claim by P.O.B., Inc. and idemnify and hold harmless the Unsecured Creditors' Committee with respect thereto.

Confirmation of the Plan shall constitute the release of any right of Allied or other interested parties to pursue preference actions under Section 547 of the Code.

## ARTICLE VIII

### *Retention of Jurisdiction*

The Reorganization Court shall retain jurisdiction to require the performance of any act that is necessary for the consummation of the Plan including, without limitation, the jurisdiction to hear and determine all claims against Allied and to enforce all causes of action which may exist in its favor and to modify the Plan pursuant to the provisions of Section 1127 of the Code.

The jurisdiction of the Reorganization Court shall continue until all of the approved and allowed claims under Class 2, Class 3 and Class 4 are satisfied pursuant to the Plan.

Conformably to Article VI of the Plan, Adversarial Proceedings No. 3–80–0578 and No. 3–80–0626 were both dismissed as aforementioned, by Orders of the Court dated 18 November 1982 and 3 March 1982, respectively. Relevant to the matter *sub judice,* Adversary No. 3–80–0626 (commenced by Complaint requesting that Les-

---

**1.** The Plan essentially calls for merger of Debtor in Possession with TSC, Inc., a former subsidiary of Debtor. The resulting corporation assumed the name, TSC, Inc. The Adversarial Proceeding No. 3–82–0522, presently before the Court, was accordingly captioned with "TSC,

Inc. formerly Allied Technology" as Plaintiff. For convenience, the Court will use the single nomenclature, "Debtor," throughout this opinion, since distinguishing the legal entities asserting Debtor's interest is unnecessary for determination of the questions before the Court.

sor "be stayed from any action to evict [Assignee], to re-enter or cause surrender of the premises...) was dismissed "with prejudice," as agreed by the parties pursuant to Lessor's Motion to Dismiss on the ground that the Adversary became moot "as the grounds for said Complaint ... no longer exist ... [in light of] the Plan confirmation."

Also as provided in the Plan, on 17 February 1982 Debtor "renewed" the instant Application to Assume the subject lease.

### ISSUES RAISED

Debtor's threshold argument is that no forfeiture of the leasehold has occurred and that, "at worst," there may have been a technical breach which has been cured, or which Debtor has a right to cure as provided in 11 U.S.C. § 365(b). Debtor contends that Lessor is essentially attempting to circumvent this Court's jurisdiction in order to enforce in a nonbankruptcy forum a contractual *ipso facto* clause which is argued to be invalid under 11 U.S.C. § 365(e)(1)(B). Debtor alleges that Lessor's "grounds" for forfeiture are contrived and spurious, and, even if deemed to have merit, cannot be properly utilized by Debtor to effect a forfeiture, as alleged, because of waiver and estoppel. Debtor further contends that assumption of the lease would be in Debtor's best interests in order to avoid potential liability to Assignee for any resulting forfeiture of the leasehold if assumption would not be permitted.

Lessor responds that there is sufficient basis to warrant a determination of forfeiture of the leasehold vis-a-vis Assignee by either Debtor-Lessee's breach by the instant Petition filing or by Debtor's erratic rent payments prior to the lease assignment. Lessor argues that 11 U.S.C. § 365(e)(1)(B) is inapplicable to a third party assignee. Instead, Lessor contends, "The *ipso facto* clause is merely declared *unenforceable* during the pendency of the bankruptcy proceedings, once the proceedings are concluded, the *ipso facto* clause is applicable and may be enforced against an unrelated third party." In essence, Lessor posits that an *ipso facto* clause cannot be "cured" by a debtor-lessee, and may be enforced against any third party in a nonbankruptcy setting. Lessor further alleges that Assignee cannot assert liability against Debtor because of Covenant 5 of the Assignment of Lease, whereby Assignee "release[d] [Debtor] from any further liability under the lease for obligations arising after the 25th day of February 1980."

Assignee reiterates Debtor's arguments that the record does not support Lessor's allegation that the leasehold has been forfeited by Debtor-Lessee's conduct, and that, despite the release clause in Covenant 5 of the Assignment, Assignee may nevertheless seek damages for any breach of "certain warranties" within the Assignment of Lease resulting in the event of a forfeiture of the leasehold due to Debtor-Lessee's conduct.

Assignee and Debtor also contest Lessor's interpretation of 11 U.S.C. § 365(e)(1)(B). Both argue that such interpretation would render leases containing *ipso facto* clauses valueless, as "only a hapless Jack would trade a cow for such a contract." In essence, both argue that 11 U.S.C. § 365(e)(1)(B) (and (f)) would be meaningless if an *ipso facto* clause within an assumed lease would be enforceable, as such, upon completion the bankruptcy proceeding. (It should be noted, in this regard, that the case has not to date been closed as a matter of fact).

The Unsecured Creditors' Committee essentially argues that assumption of the subject lease could have unnecessary "grave consequences" upon Debtor's estate. The Unsecured Creditors' Committee also disputes the allegation of potential liability in the event Debtor does not assume, arguing that Assignee has failed to file a proof of claim for contingent liability, and that, since time for such filing has lapsed, no such claim could be asserted against Debtor's estate. The Unsecured Creditors' Committee therefore concludes that assumption would constitute little more than a Court-approved "preference" of Lessor and Assignee over the unsecured creditors, and

that "equity and fairness" require that any assumed liabilities be subordinated to the claims of unsecured creditors.

These matters were all presented for this Court's determination and were pending on 22 July 1982, the date Lessor filed a "Complaint for Restitution of Real Property and Money Damages" in state court. The Complaint alleges that Lessor, by virtue of this Court's Order dated 3 March 1982 dismissing Adversary Proceeding No. 3–80–0626 "with prejudice," is now entitled to maintain the state court action to evict Assignee on the basis of forfeiture of the lease by late payment for rent and/or Debtor's Petition filing. The Complaint also requests money judgment against both Debtor and Assignee for Lessor's damages, alleged to be the difference, calculated from the date of the assignment, between the fair market value of the leasehold and the rents actually collected. As aforementioned, this matter is presently pending in state court.

On 12 August 1982, Debtor filed the Complaint presently before this Court requesting that Lessor be stayed from pursuing its state court action. The Complaint also alleges that Lessor's institution of the state court action was in bad faith and fraudulent by omission therein of the details of the proceedings in this Court, alleged to justify an award of compensatory damages and additional punitive damages in the amount of $10,000.00. Debtor also requests that this Court find Lessor in contempt of Court for violation of the automatic stay. See 11 U.S.C. § 362.

Lessor responded with the instant Motion to Dismiss. In debating the Motion, the parties basically restated their views as earlier presented to the Court. In addition, Lessor emphasizes its beliefs that the automatic stay of 11 U.S.C. § 362 is inapplicable to Lessor because the lease is not "property of the estate," and that this Court's Order of 3 March 1982 in Adversary 3–80–0626 is *res judicata* as to Debtor's request for a stay of Lessor's eviction action.

The parties also dispute this Court's jurisdiction over Debtor's Complaint. Debtor argues that the lease interest constitutes "property of the estate," as that term is defined in 11 U.S.C. § 541, and that this Court therefore possesses exclusive jurisdiction over disposition of the leasehold. Debtor points out that 11 U.S.C. § 365(f), providing for assignment of assumed leases by a debtor in possession, appears to support the view that a lease may constitute property of the estate even if the leasehold is assigned. Note 11 U.S.C. § 1107(a). Lessor argues that, since Debtor has no present right to possession of the leasehold, the leasehold is not "property of the estate" within the meaning of 11 U.S.C. § 541. On this basis, Lessor argues that this Court therefore does not possess subject matter jurisdiction since it essentially concerns only the rights of Lessor and Assignee. Lessor further argues that a forfeiture, as alleged, could not have even an attenuated effect on Debtor's estate because of Assignee's release of Debtor in Covenant 5 of the Assignment of Lease, and that this Court therefore should properly defer for determination of Assignee's interest in a nonbankruptcy forum.

## DECISION AND ORDER

### I

The initial question before the Court is whether a debtor's right to assume a lease under 11 U.S.C. § 365 is applicable to a lease in which the debtor, prior to the Petition filing, had assigned possessory interest in the leasehold.

It is the determination of the Court that a possessory interest (i.e. privity of estate with the lessor) is not a requisite to the exercise of a debtor's right to assume the lease under 11 U.S.C. § 365.

A lease of real property is a hybrid legal arrangement creating both privity of estate and privity of contract between the lessor and lessee. See generally, 33 O.Jur.2d Landlord and Tenant § 4, and 49 Am.Jur.2d Landlord and Tenant § 1. The "leasehold" is the interest in real property involved, typically the *res* minus the lessor's reversionary interest. 33 O.Jur.2d Landlord and Tenant § 4. An assignment of the

leasehold, without reservation of a right of reentry, may divest the lessee-assignor of the estate. See generally, 33A O.Jur.2d Landlord and Tenant §§ 242, and 258–265, 49 Am.Jur.2d Landlord and Tenant § 395; Note also, O.R.C. §§ 5321.01(B) and 5321.03, which limit eviction actions to lessors and sublessors. The lessee-assignor, however, remains in privity of contract, and continues to be liable, as a surety, for covenants designed for protection of the lessor's reversion. *Gholson v. Savin,* 137 Ohio St. 551, 19 O.Ops. 309, 31 N.E.2d 858 (1941); 33A O.Jur.2d Landlord and Tenant § 262. The lessee-assignor, nevertheless, ceases to have any direct interest in the leasehold and thus has no cause of action against an assignee on the basis of a successful eviction of the assignee. 49 Am.Jur.2d Landlord and Tenant § 436. Significant to the instant matter, the lessee-assignor does, of course, become liable to the assignee for any express covenants within the assignment itself. 33A O.Jur.2d Landlord and Tenant §§ 242, and 258–265; 49 Am.Jur.2d Landlord and Tenant § 434.

■ In the case at bar, the parties do not dispute that Debtor has validly assigned its interest in the subject lease without reservation of a right of reentry, and consequently has no possessory interest in the leasehold. 11 U.S.C. § 365, however, only requires that the lease be "of the debtor" in order to be assumable. 11 U.S.C. § 365(a). It is the opinion of the Court that a "lease of the debtor," as that term is used in 11 U.S.C. § 365, may be solely contractual in nature, and that there is no direct limitation upon a debtor's rights under 11 U.S.C. § 365 by the concept of "property of the estate" as elaborated in 11 U.S.C. § 541.

■ The decision of a debtor in possession to assume or reject an unexpired lease is within the "business judgment" of the debtor in possession, subject to court approval, and is in no way conditioned upon a possessory interest in the leasehold. 11 U.S.C. §§ 365, 1107 and 1108; *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959

(1943). A debtor in possession, by definition, "operates the business." 11 U.S.C. §§ 1107(a) and 1108. Such operation implicitly requires the exercise of reasonable judgment in ordinary business matters, including assumption or rejection under 11 U.S.C. § 365. This business judgment is controlling throughout the reorganization of a debtor in possession, though often, as in the case of the assumption or rejection of unexpired leases, subject to Court approval. 11 U.S.C. §§ 365(a), 1107(a) and 1108.

■ Court approval of a debtor in possession's judgment that assumption of a lease is in the best interest of the debtor's business should not be withheld on the basis of a second-guessing of the debtor's judgment, unless the matter is presented in the context of 11 U.S.C. § 1104(a)(1) for determination of the larger question of the competency of debtor in possession's business judgment. It is not the function of the Court to operate the debtor, 11 U.S.C. §§ 364(a), 1104(a), 1107(a) and 1108. As long as assumption of a lease appears to enhance a debtor's estate, Court approval of a debtor in possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code, and particularly of 11 U.S.C. § 365.

## II

The threshold question under 11 U.S.C. § 365 is whether the subject lease existed at the time of the Petition filing. If the lease terminated by a prepetition forfeiture, 11 U.S.C. § 365 would be inapplicable, even if the leasehold were essential to reorganization, because a "lease of the debtor" would have ceased to exist. See *Executive Square Office Building v. O'Connor and Associates Inc.,* 19 B.R. 143, 9 B.C.D. 35 (Bkrtcy.N.D.Fla.1981), and extensive citation therein.

■ Lessor contends that the subject lease ceased to exist because of (1) the assignment itself, (2) erratic rent payments, and (3) the lessee's filing in this Court, each

alleged to constitute independent material breaches of the lease.[2] In essence, Lessor argues that prepetition conduct of Debtor-Assignor and/or Debtor's act of filing a bankruptcy petition should effect a forfeiture of the leasehold of a performing assignee, and that the Debtor-Lessee-Assignor has no right to dispute the alleged forfeiture in a bankruptcy forum for purposes of either assumption or handling any handling any resulting liability within the bankruptcy proceeding.

Having determined, however, that Debtor has properly applied for assumption of the instant lease, the resolution of an allegation of a prepetition forfeiture of that lease is impliedly necessary for this Court's determination both of the lease's existence and the reasonableness of Debtor's business judgment to assume.

■ It is the determination of the Court that Debtor's conduct has not effected a forfeiture of the subject lease. As a general rule, "the law abhors a forfeiture." See this Court's opinion in, *Acme Precision Building Limited v. Dayton Forging & Heat Treating, Inc.,* 23 B.R. 79 (Bkrtcy.1982), and citation therein; see also 2 Collier on Bankruptcy, 15th Ed., ¶ 365.04. In the case at bar, Lessor's allegations of forfeiture appear to be little more than a specious legal technicality asserted to rewrite or rescind the lease, rather than to rectify any *bona fide* damages. The subject assignment, though initially contested, was entered only subsequent to Lessor's valid written consent. The only rent payment "default" of record, (the dishonoring of two rent checks because of Debtor's intervening Petition filing), was promptly cured by Assignee.[3] The Court also notes that there is no evidence in record that Lessor ever offered notice of default as required in Condition 17 of the lease. To the contrary, Lessor's correspondence to Assignee in 1980 indicates

that Debtor's alleged erratic rent payments were not the then perceived basis for a possible eviction action, which instead was argued to be exclusively based upon the *ipso facto* clause.

■ Since it is undisputed, however, that an *ipso facto* clause is unenforceable directly against a debtor assuming a lease containing such a clause, (see 11 U.S.C. § 365(b)(2)(B) and (e)(1)(B)), the Debtor's act of assumption of the lease acts to cure this "default," a curing which is preemptive of any relevant state law. U.S.Const., Art. 1, § 8. Any conclusion to the contrary would render a debtor's right to assign (or to preserve an assignment prior to assumption) meaningless, and would obviously be contrary to 11 U.S.C. § 365. In essence, to permit forfeiture of an assumed lease on the basis of enforcement of an *ipso facto* clause against a performing nondebtor assignee would render any assumed lease containing an *ipso facto* clause valueless for purposes of assignment, and would be wholly inconsistent with the concept implicit in 11 U.S.C. § 365 that assumption of a lease rectifies the lease, and otherwise places the parties in their prepetition postures. Thus, although it is perhaps unclear what result would occur under Ohio law if an *ipso facto* clause were directly asserted against a performing assignee on the basis of a rejecting debtor's petition filing, this question is not before the Court because of Debtor's assumption of the lease, thereby "curing" any arguable breach of the *ipso facto* clause. Note 33A O.Jur.2d Landlord and Tenant § 540.

■ In this regard, the Court also notes that any arguable forfeiture has been waived by Lessor's consent to the assignment and acceptance of rent payments from both Lessee and Assignee during and since the time period of the alleged forfeiture.

---

2. The Court notes that in the state court eviction action Lessor has asserted only the latter two grounds as bases for the eviction.

3. Although Lessor refers to Debtor's previous "poor" payment record, nothing in record substantiates Lessor's allegation. The only refer-

ence in record to Debtor's payment history is allusion to Debtor's delinquent payments by hearsay contained in correspondence itself of little probative value. The Court also notes that it is undisputed that there is presently no rent arrearage.

### III

Having determined that the lease existed at the time of the Petition filing, the basic question now before the Court is whether Debtor's business judgment that the lease should be assumed is reasonable. Debtor argues that it is in Debtor's best interests to assume the subject lease in order to avoid potential liabilities which may arguably occur if assumption is not approved. It is the determination of the Court that this business judgment should not be judicially reversed inasmuch as the facts do not discredit such a conclusion.

A basic requisite for assumption of a lease by a Chapter 11 debtor is the debtor's financial entanglement, i.e. the enhancement of the debtor's estate by the assumption of the liability.

It is the opinion of the Court, however, that assumption of liability to avoid arguably greater liability is a valid consideration in a debtor in possession's exercise of its business discretion.[4] In this case, the assumption of the subject lease does not appear to involve a substantial risk, (as discussed in Part IV below). On the other hand, the potential liabilities in the event of rejection appear to be significant. By Covenant 3 of the Assignment of Lease, Debtor-Assignor specifically covenanted that Assignee would have "... the right to further renew said lease for an additional term of five (5) years after the expiration of the initial term of five (5) years, provided [Assignee] is not [itself] in default [under the lease]." As intimated in Lessor's state court eviction action, in the event of a lease forfeiture, Debtor could arguably be liable to Assignee for considerable damages, including the amount of Assignee's increased rent expenses for the remainder of the lease term(s), and for other damages, such as associated moving costs. Furthermore, in a situation in which the assumption of an

assigned lease appears to involve minimal liability, the desire to avoid anticipated litigation expenses which may result from rejection may itself constitute a valid ground for assumption, even if the alleged grounds for liability appear attenuated or unlikely to result in an actual finding of liability. In this regard, the Court particularly notes that Article VI of Debtor's Plan of Reorganization specifically provides that Debtor "will assume the defense of any claim by P.O.B., Inc. [the Assignee]."

The Court also finds that the record does not sustain allegations that liabilities to Assignee incurred by a hypothetical rejection/breach of the lease by Debtor could not be asserted by Assignee. Assignee's "release" of Debtor in Covenant 5 of the Assignment of Lease "from any further liability under the lease for obligations arising after the 25th day of February, 1980" appears to release Debtor-Assignor from liability to Assignee under the terms of the lease agreement. It does not release Debtor from liability to Assignee for a breach of a covenant within the Assignment itself, nor does it release Debtor from liability to Lessor for any breaches of the original lease agreement, as is specifically provided in both the lease and in Lessor's consent to assignment. This is further evidenced and emphasized by Lessor's state court action seeking damages against Debtor based upon the lease.

In addition, the argument that any claim Assignee may have against Debtor has "lapsed" because of Assignee's "failure" to file a proof of claim lacks merit. A claim based upon rejection of a lease arises at the moment of rejection, and is essentially a postpetition claim which is constructively handled as prepetition under the administration of the bankruptcy proceeding. 11 U.S.C. §§ 365(g) and 502(g); See also

---

4. In this regard, the Court notes that 11 U.S.C. § 365(f), regarding postpetition assignments, is inapplicable to the instant facts, although the provision does indicate that the assumption of a lease may be validly premised upon the business judgment of anticipated profit in a subsequent assignment, which does appear consist-

ent with the instant holding. The Court also notes that 11 U.S.C. § 365(k), which absolves a debtor from continuing liability under an assigned assumed lease, is also inapplicable to *pre*petition assignments by the debtor, and thus also inapplicable to the case at bar.

this Court's opinion in *Solon Automated Services, Inc. v. Georgetown of Kettering, Ltd.,* 22 B.R. 312, 9 B.C.D. 552, 6 C.B.C.2d 1484 (Bkrtcy.1982). There is no requirement that a "claim arising from the rejection" of a lease be asserted based upon the lease itself, and it is the opinion of the Court that Assignee's potential claim based upon the Assignment of Lease constitutes a "claim arising from the rejection" of the subject lease. Since Assignee's claim for damages would not arise until the act of rejection, the deadline for proofs of claims for prepetition debt (i.e. a claim as defined in 11 U.S.C. § 101(9)(A)) cannot bar Assignee's assertion of an alleged claim for postpetition debt (i.e. a claim as defined in 11 U.S.C. § 101(9)(B)), since such claim will be assertable only in the event of rejection which may or may not occur (if at all) by the time of the deadline for prepetition claims. 11 U.S.C. § 501(d). As indicated in the legislative history of the Code.

> [11 U.S.C. § 501(d)] governs the filing of claims [based upon the rejection of a lease of the debtor]. The separation of this provision from the other claim filing provisions in this section is intended to indicate that claims of the kind specified, which do not become fixed or do not arise until after the commencement of the case, must be treated differently for filing purposes such as the bar date for filing claims. The Rules will provide for later filing of claims of these kinds. H.R.No. 95–595, 95th Cong., 1st Sess. 351 (1977); S.R.No. 95–989, 95th Cong., 2d Sess. 61 (1978), as quoted in Part 3 of the *Collier Pamphlet Edition* of the Bankruptcy Code, Legislative History of 11 U.S.C. § 501.

Instead, the deadline for the filing of proofs of claims arising under 11 U.S.C. § 502(g) is "within such time as the Court may direct," presumably not prior to the existence of the claim. B.R.P. 11–33(b)(2)(B); *Solon Automated Services, Inc. v. Georgetown of Kettering, Ltd., supra; In re Hall,* 8 B.R. 237, 239 (Bkrtcy.W.D.Okla.1982).

## IV

11 U.S.C. § 365(b)(1) provides that, "if there has been a default," a debtor in possession may not assume a lease under 11 U.S.C. § 365 unless the debtor in possession:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

> (C) provides adequate assurance of future performance under such contract or lease.

As aforementioned, 11 U.S.C. § 365(b)(2) excepts a "breach" of an *ipso facto* clause from the duty to "cure" under 11 U.S.C. § 365(b)(1)(A).

In this case, it is undisputed that, if assumption is approved, any "breach" of the subject lease which may arguably have occurred has been cured, and Assignee has been fully reimbursed for "losses" resulting from such "breach." If assumption is approved, 11 U.S.C. § 365(b)(1)(A) and (B) consequently are not at issue *instanter.* The question arises, therefore, whether Debtor has provided "adequate assurance of future performance," 11 U.S.C. § 365(b)(1)(C).

Although 11 U.S.C. § 365(b) is only triggered in the event of a default (and even a technical default is not definitively established by the record) it is, nevertheless, the specific finding of the Court that Debtor in Possession has provided adequate assurance of future performance. As earlier stated by this Court, "Adequate assurance does not require an absolute guarantee of repayment, and is largely a factual determination." *Hennen v. Dayton Power and Light Co.,* 17 B.R. 720, 725, 8 B.C.D. 1102, B.L.D. ¶ 68,631 (Bkrtcy.1982), and citation therein. In this case it appears reasonably certain that Lessor will receive complete performance of the terms of the lease. Relevant to this finding are the facts that Assignee has

fully performed to date and appears capable of continued full performance, and also the apparent marginal risk of liability because of the marketability of the lease to subsequent assignees in the event Assignee were to prove incapable of performing due to unforeseen circumstances.

## V

■ The Unsecured Creditors' Committee requests that the Court subordinate any claims resulting from the assumption of the subject lease to the claims of unsecured creditors pursuant to 11 U.S.C. § 510(c)(1), which provides that the Court may:

> under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest. . . .

Subordination is argued as appropriate under the instant facts on the general grounds of "fairness" and "equity."

■ It is the determination of the Court that subordination, as requested is unwarranted in the case at bar. Subordination is essentially a discretionary exercise of the Court's equitable powers, and should only be used sparingly to rectify obvious inequities. See generally, 3 Collier on Bankruptcy, 15th Ed., ¶ 510.04. "[G]enerally, . . . a claim may normally be subordinated only if its holder is guilty of misconduct." S.R. No. 989, 95th Cong., 2d Sess. 74 (1978), cited in Part 3 of the *Collier Pamphlet Edition* of the Bankruptcy Code, Legislative History of 11 U.S.C. § 510, and in *3 Collier on Bankruptcy,* 15th Ed., ¶ 510.04. It is the opinion of the Court that subordination should not be used to frustrate legitimate business dealings of a debtor in possession undertaken for valid purposes within the reorganization. This is particularly true in the instant case since the subject lease appears to be in the best interests of Debtor's estate, and thus itself serves to benefit the unsecured creditors. Without specific facts of record demonstrating an inequitable result, this Court should not subordinate liabilities assumed in apparent good faith, though the question could later be presented to the Court (in more timely fashion) upon elaborated facts when and if such claims are actually asserted.

## VI

The final matter before the Court is Debtor's request for sanctions against Lessor for institution of the questioned postconfirmation state court eviction action against Debtor and Assignee. The Court notes that Lessor's "eviction action" requests, *inter alia,* money "damages" against Debtor and Assignee, jointly and severally, for what is essentially an "unliquidated" scheduled debt for which Lessor has duly filed a Proof of Claim in this Court.

■ This Court's postconfirmation jurisdiction extends over "any necessary party . . . to perform any . . . act . . . necessary for the consummation of the plan." 11 U.S.C. § 1142(b); *Solon Automated Services, Inc. v. Georgetown of Kettering, Ltd., supra.* The key document for determination of this Court's postconfirmation jurisdiction is thus the Plan itself, which is binding on all creditors, including Lessor. 11 U.S.C. § 1141(a).

In this case, Debtor's Plan of Reorganization unequivocally retains postconfirmation jurisdiction in this Court for resolution of any claim Lessor may have against Debtor based on either a prepetition breach or postpetition rejection (which is constructively a breach, 11 U.S.C. § 365(g)) of the subject lease. Specifically, Article VII of Debtor's Plan of Reorganization provides that the Court "shall retain jurisdiction . . . to . . . determine all claims against [Debtor] . . . ," and Articles V and VI explicitly provide that the Court will retain postconfirmation jurisdiction over the questions raised within Debtor's Application to assume the subject lease.

■ As a general rule, any claim based upon a lease involving a debtor and which arose prior to a debtor's decision to assume or reject, should be properly resolved within the bankruptcy administration, unless specific provision is made other-

wise. U.S.Const., Art. 1, § 8; 11 U.S.C. § 365; 28 U.S.C. § 1471. In this regard, the Court specifically notes that the right to cure a breach of an unexpired lease under 11 U.S.C. § 365(b) extends to "a default," a term which is not qualified and presumably includes any default which occurred prior to the time of assumption. 11 U.S.C. § 365(b).

■ A lessor of real property may assert any combination of three types of claims against a debtor's estate—(1) a prepetition claim (as defined in 11 U.S.C. § 101(9)(A)) based upon a prepetition breach or forfeiture of the lease, (2) a postpetition claim for a breach of the lease prior to a debtor's assumption or rejection under 11 U.S.C. § 365, and/or (3) a post-petition claim (as defined in 11 U.S.C. § 101(9)(B)) based upon a breach of the lease which occurs, by statute, upon rejection of the lease within the bankruptcy proceeding, 11 U.S.C. §§ 365(g) and 502(g). Regardless of which type of claim is asserted, the Code contemplates that such claim(s) be resolved exclusively within the bankruptcy proceeding, to avoid needless postconfirmation litigation in a nonbankruptcy forum, such as the type in question *instanter*. For example, if a debtor failed to pay rent both before and after the petition filing and then rejected the lease under 11 U.S.C. § 365, the lessor would assert the resulting claims against the estate as follows:

(1) The prepetition claim would be asserted as such, subject to usual prepetition avoidance powers. Priority for such claim would be determined by 11 U.S.C. § 726 in Chapter 7, or pursuant to the terms of the plan under Chapters 11 or 13. 11 U.S.C. §§ 101(9)(A), 501, 502, and 506.

(2) The post-petition claim for breach prior to the act of rejection would be asserted as an administrative expense. 11 U.S.C. § 503(b)(1); *Matter of Chase Commissary Corp.,* 11 F.Supp. 288 (S.D.N.Y.1935); and see generally, *2 Collier on Bankruptcy,* 15th Ed., ¶ 365.03[2], and citation therein.

(3) The claim for damages "arising from the rejection" of the lease would be asserted as a prepetition claim by filing of a proof of claim after the rejection "within such time as the Court provides," again subject to usual prepetition avoidance powers. 11 U.S.C. §§ 365(g) and 502(g); B.R.P. 11–33(b)(2)(B). Priority of the claim would be determined as would be determined for prepetition claims.

On the other hand, if the debtor had assumed the lease under 11 U.S.C. § 365, both the prepetition claim and the postpetition claim for any breach prior to assumption would, of necessity, be promptly cured pursuant to 11 U.S.C. § 365(b)(1)(A), and the parties would otherwise return to their prepetition stance with no further lessor remedies for conduct prior to the date of assumption. This scheme in no manner either contemplates resolution of such questions or liquidation of any alleged damages by a nonbankruptcy forum. 11 U.S.C. §§ 362 and 365, and 28 U.S.C. § 1471.

In the case at bar, Lessor argues that this Court has no jurisdiction over Debtor's Complaint because the subject matter of Lessor's eviction action is the leasehold, which is not property of the estate, and therefore is not within this court's subject matter jurisdiction. It is the determination of the Court, however, that the vesting of the lease within the concepts of "property of the estate" is irrelevant to the question of jurisdiction in the matter *sub judice*. Lessor's action is, in essence, an attempt to liquidate and collect a scheduled debt in a nonbankruptcy forum during the pendency of Debtor's bankruptcy proceeding. Although Debtor has pleaded jurisdiction under 28 U.S.C. § 1471(e), it is self-evident that this Court's jurisdiction to resolve scheduled claims against an estate lies within the broad jurisdictional grant of 28 U.S.C. § 1471(a), (b), and (c), (and, if collection is attempted directly from estate assets, also (e)); and that this Court may act accordingly. See this Court's opinion in *Matter of Century Entertainment Corp.,* 21 B.R. 160, 162 (Bkrtcy.1982).

In this case, Lessor has asserted in state court what is essentially a prepetition claim for damages arising by an alleged forfeiture of the subject lease by Debtor's conduct.[5] This "claim" was duly scheduled. 11 U.S.C. § 362(a)(1) stays "commencement ... of a proceeding ... against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title...." In a Chapter 11 proceeding, the stay of 11 U.S.C. § 362(a)(1) continues until "the time the case is closed" or "the time a discharge is granted or denied," 11 U.S.C. § 362(c)(2)(A) and (C), which ordinarily is the moment of confirmation of the Chapter 11 Plan of Reorganization, 11 U.S.C. § 1141(d)(1). A Chapter 11 Plan, however, may except this general rule for the timing of the discharge. 11 U.S.C. § 1141(d)(1). In this case, Debtor's Plan of Reorganization provides such exception by specifying that this Court will retain jurisdiction "to hear and determine all claims against Allied." The Plan provides further exception by reserving the questions within Debtor's Application to assume the subject lease for this Court's postconfirmation resolution, thus holding in abeyance the discharge of those claims to be resolved within the Application. Of necessity, resolution of Debtor's Application to assume the subject lease includes determination by this Court of Lessor's allegation of prepetition forfeiture (to determine the lease's existence) and the amount of damages, if any (to determine if Debtor is capable of curing).

It is the determination of this Court that Lessor's state court action is blatantly violative of both this Court's Order of Confirmation of Debtor's Plan, and of the automatic stay of 11 U.S.C. § 362(a)(1). In the state court action, Lessor essentially requests resolution of a claim pending before this Court. The claim is vested within this Court's jurisdiction pursuant to 28 U.S.C. § 1471, as retained within the Court's postconfirmation jurisdiction by specific provision within the Plan of Reorganization, which is binding upon Lessor. 11 U.S.C. § 1141(a). Furthermore, since this claim has not yet been discharged, and no request for relief from stay has been filed, the automatic stay of 11 U.S.C. § 362(a)(1) has therefore been in effect continuously since commencement of the instant bankruptcy case. 11 U.S.C. §§ 362(c)(1)(C) and (d), and 1141(d)(1).

The Court notes that this Court's Order of Dismissal dated 3 March 1982 within Adversary 3–80–0626 cannot act as a bar to the above determinations. Since the Court's earlier Order was premised upon the matter then before the Court being mooted by confirmation of the Plan, and since the Plan itself calls for resolution of the matter herein, a violation of 11 U.S.C. § 362 as incorporated into the Plan of Reorganization may be remedied herein as a violation of the Court Order upon which the earlier Order of Dismissal was premised, and is in no way barred by the earlier Order. Furthermore, such a specious argument flies in the face of the exclusive and conclusive statutory effect of the confirmation order. 11 U.S.C. § 1141.

It is the further determination of the Court that Lessor's action constitutes misconduct, and as such should be sanctioned as contempt of Court. 11 U.S.C. § 105. Lessor was fully cognizant of the posture of the questions being litigated before this Court. No reasonable interpretation of these proceedings, (which the Court notes are binding upon Lessor, 11 U.S.C. § 1141(a)), could justify commencement of a nonbankruptcy proceeding regarding identical issues for which this Court's determination would necessarily be *res judicata*. Such attempted collateral attack, though disguised by legal artifice, should be recognized as such, and should not be tolerated.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Debtor's

---

**5.** This *ratio decidendi* is not changed by allegation that the alleged breach of the *ipso facto* clause is a "postpetition" claim, since such claim is not cognizable for purposes of distribution of a debtor's estate. 11 U.S.C. § 365(e)(1)(B).

Application to assume the subject lease is APPROVED.

IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that the Unsecured Creditors' Committee's Application to subordinate any assumed claim is DENIED.

The Court further finds that Lessor has acted in contempt of this Court's jurisdiction, and IT IS THEREFORE FURTHER ORDERED that Lessor reimburse Debtor for all attorney fees and litigation expenses incurred in connection with both the defense of the state court action and the protection of Debtor's rights before this Court in Adversary No. 3–82–0522.

It is the further finding of the Court that the subject lease has been cured in satisfaction of 11 U.S.C. § 365(b), and that Lessor is, therefore, enjoined from any further action to collect any claim based upon the subject lease arising prior to assumption of the lease.