RYAN & WALSH v. DOUGLAS COUNTY, IMPLEADED WITH COWIN & McHUGH ET AL., APPELLANTS, AND NATIONAL BANK OF COMMERCE, APPELLEE.

FILED FEBRUARY 4, 1896.   No. 5759.

1. **Contracts: DEFINITION OF "DUE."** The term "due" is employed to express distinct ideas. In some connections it is held to mean a debt immediately payable. In others it signifies a state of indebtedness merely, without reference to the time of payment; but does not include contingent liabilities which may ripen into absolute indebtedness upon the future performance of contract obligations.

2. Construction of Assignment of Interests Due Contractors for County Building: ATTORNEYS' LIENS. R. & W., being engaged as contractors in the construction of a public building for D. county, executed an assignment as follows: "To the Board of County Commissioners: For value received we hereby assign all our interest in warrants or vouchers due us from said county to the Bank of Commerce, and hereby authorize said bank to receipt for said warrants or vouchers in our name, and to pay all warrants or vouchers to the Bank of Commerce." *Held,* Not to include money subsequently earned by R. & W. in the performance of their contract with the county.

APPEAL from the district court of Douglas county. Heard below before SCOTT, J.

*Cowin & McHugh, J. J. O'Connor,* and *Brome, Andrews & Sheean,* for appellants.

*E. J. Cornish, contra.*

POST, C. J.

In the year 1887 the firm of Ryan & Walsh, by written contract, undertook the erection, for Douglas county, of a building described as a county hospital, the stipulated price therefor being $120,033. Soon after the commencement of the work, a controversy arose between the contractors and the county, involving the construction of the plans and specifications for said building. During the progress of the work difficulties multiplied so that Ryan & Walsh, in order to protect themselves in their disputes with the county, consulted Hon. John C. Cowin of the Omaha bar, upon whose advice they appear to have acted until some time in the year 1888. In the year last named Mr. Cowin associated with himself Mr. W. D. McHugh, in the firm name of Cowin & McHugh, and thereafter said firm repre-

sented Ryan & Walsh in said controversy. On the completion of the building in the month of February, 1890, Ryan & Walsh, under the advice of Cowin & McHugh, presented a bill for $69,-404.09, being the amount of the balance claimed by them, and which included the sum of $50,612.09 for extra work and material done and furnished at the special instance and request of the county. The county board, after a protracted investigation, made an order allowing the sum of $17,951.57 in full of said demand, and from which an appeal was by the claimants taken to the district court for Douglas county. Ryan & Walsh, in the meantime being pressed for funds with which to carry on their work and to meet their obligations incurred for material, gave numerous written orders upon the county directing payment out of money earned by them under said contract. Among the orders thus given was one in favor of the Bank of Commerce, as follows:

"OMAHA, 2—9, 1889.

"To the Board of County Commissioners of Douglas County: For value received we hereby assign all our interest in warrants or vouchers due us from said county to the Bank of Commerce, and hereby authorize said bank to receipt for said vouchers or warrants in our name, and to pay all warrants or vouchers to the Bank of Commerce.

"WALSH & RYAN.
"DENNIS CUNNINGHAM.
"JERRY RYAN."

It was deemed advisable by the bank, in order to protect its rights under the foregoing assignment, to join in the appeal of Ryan & Walsh, and the necessary bond and notice were accordingly given by it. Issue being

joined in the district court, a trial was had therein at the February, 1891, term, resulting in a verdict and judgment for Ryan & Walsh in the sum of $37,571.20. On the 27th day of February, 1891, Cowin & McHugh filed notice of an attorney's lien upon said judgment in the sum of $4,000, being a general balance claimed for their services in said cause. On the 20th day of November, 1891, they filed a second notice, in which they claimed a further lien in the sum of $1,000, being $150 for money advanced in the prosecution of said cause, and $850 for services rendered since the date of the lien first mentioned; and on the 27th day of June, 1891, J. J. O'Connor gave written notice of an attorney's lien in said cause on account of services rendered Ryan & Walsh, in the sum of $5,000. The situation was further complicated by suits of creditors, other than those above named, to enforce payment on account of the orders or partial assignments held by them in which the county had been enjoined from paying, and Ryan & Walsh from receiving, any part of the money adjudged due the latter. In view of the many conflicting claims, Ryan & Walsh, who were then insolvent, on the 20th day of November, 1891, by their attorneys, Cowin & McHugh, instituted proceedings in the nature of a bill of interpleader to which the county and the several claimants of the fund in dispute, eighteen in number, were made parties. Upon the issues joined by the answers of the defendants named in said proceeding there was a final decree determining the rights of the parties in the premises, but which at this time concerns us only so far as it relates to the claims of Cowin & McHugh, O'Connor, and the Bank of Commerce. The

answer of the bank is unfortunately not found in the record, but, judging from the decree of the district court, its contention therein was that the effect of the order or assignment above set out was to create in its favor a first lien for advancements made, *and to be made,* to Ryan & Walsh of all money then due, or to be thereafter earned by them under their contract with the county. In that view the court evidently concurred, since it is in the third finding recited:

"That on said 19th day of February, 1889, the said plaintiffs sold, assigned, transferred, and set over to the said Bank of Commerce, by an instrument in writing bearing that date, all their right, title, and interest in and to all moneys, warrants, or vouchers due or to become due to the said plaintiffs from the said county of Douglas under and by virtue of said contract between said plaintiff and said county of Douglas, and authorized the said Bank of Commerce to receipt for all vouchers or warrants in the name of said plaintiffs, and instructed the defendant, the county of Douglas, to pay all warrants or vouchers due or to become due to said plaintiffs from said county of Douglas under said contract to the said Bank of Commerce, said instrument being intended between the parties as collateral security merely to the indebtedness then owing and which thereafter might be contracted by said plaintiffs with the said Bank of Commerce; that the board of county commissioners were duly notified of said order or assignment and the same was filed with the board of county commissioners of Douglas county on the 20th day of March, A. D. 1889."

The indebtedness of Ryan & Walsh to the bank at that time approximated $20,000, and there were

delivered to it by the county clerk, subsequent to the date of said assignment, five warrants drawn to Ryan & Walsh, aggregating $17,946.93, and dated, respectively, February 20, March 16, May 20, July 20, and September 7, 1889. The bank also, according to the finding of the court relying upon said assignment, advanced to Ryan & Walsh the further sum of $35,144.12, which was used by them in carrying on the work under their contract with the county, and which sum is now due and wholly unpaid. The court, upon the foregoing findings and evidence, ordered the amount due on the judgment against the county to be applied, first, in satisfaction of the indebtedness of Ryan & Walsh to the bank; second, that the balance should be distributed *pro rata* among the other assignees of said firm; and from which order and decree Cowin & McHugh and O'Connor have appealed to this court.

The question first suggested on this appeal is the effect of the instrument, upon which the bank rests its claim, to the fund in controversy. That an order payable out of a particular fund operates as an equitable assignment thereof *pro tanto* is conceded by appellants; nor can it be doubted that an assignment of money to become due by the terms of an existing contract is valid and enforceable in equity. (*Field v. City of New York*, 6 N. Y., 179; *Devlin v. City of New York*, 63 N. Y., 15; *Ruple v. Bindley*, 91 Pa. St., 299; *Bates v. Richards Lumber Co.*, 57 N. W. Rep. [Minn.], 218; *Krapp v. Eldridge*, 33 Kan., 106.) But does the assignment in this instance, by its terms, include money subsequently earned by Ryan & Walsh in the prosecution of the work in which they were then engaged? We think not. Counsel for the bank, in

the brief submitted by them, refer to no authority in support of the conclusion of the district court, and our own investigation has been equally unproductive of that result. The cases examined, on the other hand, tend strongly to support the opposing view. The language of the assignment is "all our interest in warrants or vouchers due us from said county." The word "due," according to the consensus of judicial opinion, has a double meaning, viz., (1) that the debt or obligation to which it applies has by contract or operation of law become immediately payable; (2) a simple indebtedness, without reference to the time of payment, in which it is synonymous with "owing," and includes all debts, whether payable *in præsenti* or *in futuro*.

In *Allen v. Patterson*, 7 N. Y., 476, it was alleged that there was due from the defendant on account for goods sold and delivered the sum of $371.01. On affirming an order overruling a demurrer to the complaint it was said: "Counsel insist that the statement that there was 'due,' etc., did not amount to a statement that the debt had become payable; that it meant no more than the statement that the defendant is 'indebted,' etc.; and that if the word 'due' had two significations, the plaintiff could not select between them and impute to it the one which suits his purpose best," and, after citing with approval the opinion of Judge Story in *United States v. State Bank of North Carolina*, 6 Pet. [U. S.], 29*, holding that the word "due" is used both to express the mere state of indebtment and to indicate that the debt had in fact become payable, it was said: "In the latter sense I think the word 'due' was used by the pleader in the complaint."

*District Township of Jasper v. District Township of Sheridan,* 47 Ia., 183, was an action for the recovery of money as agreed between the parties, on the change of district boundaries, for the division of school funds due the first Monday in April. The fund in controversy was derived from taxes previously assessed, but which were payable at a later date. In disposing of the question the court say: "It is claimed by the defendant that a fund is due when the time arrives in which payment is enforceable, and it must be admitted that this is the ordinary meaning of the word; but while that is so, there is certainly another meaning somewhat broader."

In *Foster v. Singer,* 69 Wis., 392, the defendant was served with garnishee process in an action against Phillips, an employe, under a statute which authorized the appropriation by that means of debts "due or to become due" to the execution defendant. The garnishee summons was served August 28, and the controversy involved the salary of the defendant for that month, which, according to the evidence, was payable monthly at the end of each month. It was held that the salary for August was not on the day of the service "money due" within the meaning of the statute, since the defendant could not have maintained an action therefor against the garnishee. It was further held that it was not "money to become due," since the contract was an entirety, and to entitle Phillips, the defendant, to recover, it was necessary for him to work the entire month. In the opinion by Taylor, J., we find this language: "If Phillips had quit work on the 29th, he could not have recovered any part of his wages for the month. The debt, therefore, would only become

·due upon the contingency that Phillips continued to work for the garnishee for the entire month."

In *Bishop v. Young*, 17 Wis., 46*, it was also sought to charge the defendant as garnishee; but his liability was shown to be contingent upon the completion by Grant, the attachment defendant, as contractor, of certain buildings then in course of construction.  Grant, among other conditions, had stipulated to complete the buildings by a given date, and in case of his failure, to pay to Young damage at a given rate during the period of his default.  In affirming the judgment below for the defendant it is said: "The 'property, moneys, and credits' here spoken of are such as are in the hands of the garnishee which belong to the principal debtor.  And the 'debts due or to become due' evidently relate to such as the garnishee owes absolutely, though payable in the future.  We have no idea the statute intended to include in the language 'to become due' a debt which might possibly become due upon the performance of a contract by the defendant in attachment."  (See, also, as supporting the views above expressed, *Scudder v. Coryell*, 5 Hals. [N. J.], 340; *Hoyt v. Hoyt*, 1 Harr. [N. J.], 138; *Looney v. Hughes*, 26 N. Y., 514; *Fowler v. Hoffman*, 31 Mich., 219.)

The rule distinctly recognized by the authorities is that the term "money due," etc., implies such an obligation as will, by the effluence of time alone, ripen into a cause of action, and in no reported case, we believe, have like expressions been held to include property having a potential existence only.

The reasoning in *Bishop v. Young* is quite as applicable to the case before us.  Here the fund, which is the subject of the controversy, is the

6

product of the labor and skill of the contractors subsequent to the assignment relied upon, and had at the time in question no actual existence. Further liability of the county under the contract was conjectural merely and contingent upon the performance by Ryan & Walsh of their stipulated obligations. It was not, in any legal sense of the term, "money due;" and the assignment was accordingly ineffectual for the purpose of transferring the title thereof to the bank. It follows that the appellants, for the value of the services rendered by them for Ryan & Walsh in the matter of the claim against the county, are entitled to liens upon the judgment recovered which is enforceable in this proceeding. The bank, it should be noted, relied upon its alleged paramount title to the proceeds of the judgment without contesting seriously the value placed upon the appellants' services.

As to the claim of Cowin & McHugh, it is sufficient to say that their employment began in the year 1887, and that the foundation for the claim, afterward successfully prosecuted against the county, was laid by their construction of the plans and specifications, together with their advice during the progress of the work. The bills for extras, which were contested by the county on the ground that they were provided for by the contract, included 200 different items, requiring much time and labor in the preparation of the cause for trial. The trial which resulted in the judgment for Ryan & Walsh was begun February 10 and continued without interruption until March 3. Subsequently a bill of exceptions, consisting of 1,900 pages of type-written matter, was served upon Cowin & McHugh, which, after examination and approval

by them, was allowed by the presiding judge. The county, intending to have the judgment reviewed in this court, at once procured a transcript of the record of the district court to accompany its petition in error. However, about that time the county board, after argument by Cowin & McHugh, abandoned the proposed proceedings in error, and which determination was expressed by an appropriate resolution. Also, as illustrating the character and value of the services rendered by appellants, it may be mentioned that the motion for a new trial submitted by the county attorney contained 287 assignments, mostly relating to rulings during the course of the trial; and, as already appears, the amount recovered exceeds the allowance of the county board by more than $20,000. None of the witnesses examined upon that subject, including Hon. T. J. Mahoney, who represented the county throughout the entire controversy, place the services of counsel for Ryan & Walsh at less than $5,000, while the average estimate thereof greatly exceeds that sum. The claim of Cowin & McHugh cannot, upon the record before us, be said to be unreasonable. Indeed, a finding in their favor much greater than the amount of their claim would be warranted by the evidence.

The solution of the questions presented by O'Connor's claim is attended with more difficulty. It is, in the first place, not clear from the evidence whether his appearance in the district court was for Ryan & Walsh or Walsh alone. Previous to the alleged employment the members of the firm named, consisting of Jerry Ryan, Edward Walsh, and Dennis Cunningham, had become involved in controversies with each other, culminating in a

suit by Ryan against his copartners, in which
O'Connor appeared as attorney for Walsh, and
which resulted in an order restraining the latter
from certain threatened acts in the name of the
firm.   According to the testimony of both Ryan
and Cunningham, Cowin & McHugh were the only
attorneys authorized to represent the said firm,
and O'Connor's appearance in the district court
was as the representative of Walsh individually;
but, in the absence of record evidence to support
that contention, the actual appearance of Mr.
O'Connor in the name of the firm, and his active
participation in the trial, of which the partners
were all aware, raises a presumption of employ-
ment by the firm too strong to be thus overcome.
That proceeding was prosecuted in the name and
for the benefit of the firm, and the law implies a
promise to pay the reasonable value of the service
rendered by appellant therein.   It is, however, as
we have seen, conclusively shown by the record
that Cowin & McHugh prepared the cause for
trial and were responsible for its management
during every stage of its progress to judgment.
The office of O'Connor was that of an assistant
only for the purpose of the trial, and $1,000 will,
it is believed, under the circumstances of the case,
liberally compensate him for his services.

The decree of the district court will accordingly
be reversed with directions to proceed in accord-
ance with this opinion, or, should appellants elect
within thirty days from this date, a final order
will be entered here so modifying the decree as to
allow the appellants Cowin & McHugh the sum of
$5,000, and interest from February 23, 1891, and
to J. J. O'Connor $1,000, with interest from the
date last named, said amounts to be first liens

upon the fund in controversy and to prorate with each other.

REVERSED.