**In the Matter of ZIENEL FURNITURE, INC., Debtor.**

**John F. WALDSCHMIDT, Trustee in Bankruptcy of Zienel Furniture, Inc., Plaintiff,**

**v.**

**APPLETON INVESTMENT COMPANY, a partnership, and Leo Tugenberg and Abe Sherr, individually, Defendants.**

**Bankruptcy No. 79–01968.
Adv. No. 80–0096.**

United States Bankruptcy Court,
E. D. Wisconsin.

Aug. 11, 1981.

Scott B. Fleming, Weiss, Steuer, Berzowski & Kriger, Milwaukee, Wis., for defendants.

John F. Waldschmidt, DeStefanis & Waldschmidt, Milwaukee, Wis., Trustee in Bankruptcy.

HOWARD W. HILGENDORF, Bankruptcy Judge.

This action comes before this court on defendants' Motion for Summary Judgment filed on August 20, 1980. Defendants entered into a lease agreement with the debtor, the terms of which were the payment of $1,500.00 per month rent payable in advance and providing for a security deposit of $4,500.00. On October 12, 1979 an involuntary petition was filed by creditors of Zienel Furniture, Inc. and on November 7, 1979 an Order for Relief was entered. The trustee, John Waldschmidt, filed a complaint on March 21, 1980 to recover the security deposit. It is the trustee's contention that the $4,500.00 was a security deposit "for the premises and for no other purposes," and that on or about the time of the filing of the involuntary petition the debtor had ceased doing business at the premises and all merchandise and inventory had been removed.

Defendants answered on May 9, 1980 requesting a dismissal of the action on its merits with costs and disbursements. They also claim that the trustee's failure to assume or reject the lease under Section 365 prevented them from renting the premises or taking any other action.

The issue before this court is what is the nature of the security deposit and how is it to be applied under the bankruptcy proceedings.

■ Looking first at the nature of the security deposit, in the deposition taken from Garrick G. Zielinski, President of Zienel Furniture, there were questions asked him regarding his intention and understanding as to the purpose of the security deposit. His initial responses indicated he believed the security deposit would secure the payment of rent, however, he later contradicted this statement by responding that he had no particular understanding of the purpose of the security deposit. Whether it is a deposit for security, or a payment to secure rent, is dependent upon the intention of the parties as manifested in the terms of the lease construed in the light of all the surrounding circumstances. *Schoen v. New Britain Trust Co.*, 150 A. 696, 111 Conn. 466 (1930). Absent a clear finding of the lessee's intention the court turns to a consideration of the security deposit in relation to the entire lease agreement. In the instant case, the amount of the deposit ($4500) was a multiple of a single months rent ($1500) indicating a rational relationship between the two amounts and the logical purpose of the security deposit, that being to secure three months rent. The security deposit also appears in the lease agreement following the terms of the rental agreement and can be presumed to secure those same rental obligations. The court concludes, in the absence of limitations in the lease itself, the term "security deposit" should be read broadly to secure performance of all the lessee's obligations under the lease. *Bowles v. Westbrook Defense Homes*, 61 F.Supp. 172 (1945); *Auker v. Gerold*, 67 Ill.App.2d 425, 214 N.E.2d 618 (1966).

■ Having established the nature of the security deposit, the court must determine how it should be applied. The rights of parties to real estate leases are governed by state law unless there are contrary provisions in the Bankruptcy Code. *In re Burke*, 76 F.Supp. 5 (S.D.Cal.1948); *Urban Properties v. Benson*, 116 F.2d 321 (1940). The landlord's right to set-off the security deposit with the tenant's obligations under the lease agreement is established by Section 553 of the Bankruptcy Code.[1] Section

---

1. § 553. Setoff

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

553 creates a right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case against a claim of such creditor against the debtor that arose before the commencement of the case. Since the landlord's claim for damages is a pre-petition claim, it is a mutual debt which can be offset by the security deposit.

This court must determine the amount of damages that can be allowed to be set-off by the security deposit. Section 502 of the Bankruptcy Code was created and codified the holding in the controlling case of *Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2d Cir. 1944). Section 502(a)(7) provides:

> (7) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
> (i) the date of the filing of the petition; and
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

This section is designed to compensate the landlord for his loss while not permitting a claim so large as to prevent other general unsecured creditors from recovering a dividend. As in *Oldden*, the landlord is allowed a claim for his total damages, as limited under sec. 502(a)(7). His claim will be divided into a secured portion for amount covered by the security deposit and the remaining portion can be submitted as an unsecured claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 353 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 63 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787.

The landlord in the instant case submitted a claim for the sixty day period after the order for relief was entered and during the time the trustee had to assume or reject the lease agreement under Section 365 of the Bankruptcy Code. Section 365(d) states:

> (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

The trustee's failure to assume the lease or to act in any way would mean he has then, after 60 days has elapsed, rejected the lease. As the trustee indicated in his pleading, the debtor had vacated the premises at the time the petition in bankruptcy was filed and there would be no rental obligation assumed by the trustee as a result of said vacation of the premises.

(2) such claim was transferred, by an entity other than the debtor, to such creditor—
(A) after the commencement of the case; or
(B)(i) after 90 days before the date of the filing of the petition; and
(ii) while the debtor was insolvent; or
(3) the debt owed to the debtor by such creditor was incurred by such creditor—
(A) after 90 days before the date of the filing of the petition;
(B) while the debtor was insolvent; and
(C) for the purpose of obtaining a right of setoff against the debtor.
(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
(A) 90 days before the date of the filing of the petition; and
(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.
(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

The amount of the landlord's claim is $7,245.83 which includes the rent accrued at the time of the filing of the petition, the charges for utilities and common area charges as provided in the lease, and the rental for the 60 day period to the time of the rejection of the lease. This claim is within the parameters of sec. 502(a)(7) and is an allowable claim. The Court rules as a matter of law that the security deposit of $4,500.00 may be offset against said claim leaving a balance of $2,745.83 which is allowed as an unsecured claim.

The Motion for Summary Judgment dismissing the complaint is granted.