**In re Edwin Lewis STEINER, III and Kay Lenore Steiner, Debtors.**

**Bankruptcy No. 84–00861.**

United States Bankruptcy Court, N.D. Ohio, W.D.

June 12, 1985.

John M. Carey, Toledo, Ohio, for Lyons.

Richard Curtin, Columbus, Ohio, for DIP.

John J. Hunter, Toledo, Ohio, for Marion PCA.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Objection to Claim filed by the Debtors-In-Possession in this case. The Court has conducted a Hearing on this Objection, at which the parties agreed that the Court may make a dispositive decision on the merits of the Objection based upon the arguments of counsel filed prior to the Hearing. The Court has reviewed those arguments as well as the Exhibits attached thereto. Based upon that review and for the following reasons the Court finds that the Objection should be sustained in part, and that the Hearing should be continued for further hearings consistent with this Opinion.

### FACTS

On February 29, 1980, the Debtors-In-Possession entered into a lease agreement with Baldwin United Leasing Company (hereinafter Baldwin), whereby Baldwin would lease to the Debtors-In-Possession an implement of John Deere farming equipment. It is unclear exactly what type of equipment is involved, inasmuch as the documents list the item only as a "John Deere". The terms of that lease provided for annual rent payments of Thirteen Thousand Three Hundred Six and no/100 Dollars ($13,306.00) in each of the four (4) years the lease was to be in effect. On January 12, 1982, the Debtors-In-Possession entered into a second lease with Baldwin for the use of an Allis-Chalmers combine. The terms of that lease called for annual rent payments of Twenty-two Thousand Five Hundred Sixty-eight and no/100 Dollars ($22,568.00) in each of the five (5) years the lease was to exist. Subsequent to the execution of these agreements, Baldwin assigned its rights in the leases to Lyons Capital Resources, Inc. (hereinafter Lyons), the claimant involved in the present Objection.

In addition to the provisions for rent, the lease provided that upon its expiration, the Debtors-In-Possession would have the option to purchase the leased equipment at present fair market value. The contract also provided that in the event the lease was declared to be in default, the Debtors-In-Possession would be liable to the Lessor

for the remaining rent due on the lease, the expenses of selling or re-leasing the equipment, and certain residual values that were based upon the property's depreciation during the pendency of the lease. The Debtors-In-Possession's liability for future rent was to be reduced by any proceeds realized by the Lessor from the re-leasing or sale of the property.

On May 21, 1984, the Debtors-In-Possession filed their voluntary Chapter 11 Petition with this Court. At that time they were in default of the January 1, 1984, payment for the combine. They were also in default of the John Deere lease for failure to pay certain residual values. Although the disposition of the John Deere equipment is unclear, the Debtors-In-Possession remained in possession of the combine throughout the 1984 growing season. No money has been paid to Lyons for the post-petition use of the combine; however, the parties have agreed that Lyons is entitled to a pro-rated allowance of the contract rental rate for that usage. On or about December 12, 1984, after the Debtors-In-Possession had completed harvesting the 1984 crops, the combine was returned to Lyons.

Lyons has filed a claim in this case for the amounts it asserts are due and owing as a result of the Debtors-In-Possession's breach of the lease. Specifically, Lyons claims that they are owed all rent due at the time the Petition was filed, all future rent reserved by the lease, late charges, and the residual values. The Debtors have objected to these claims on several grounds. Included in these assertions is the contention that the accelerated rents constitute a penalty, claims for which are not properly allowable. The Debtors also assert that the leases were, in fact, contracts for the purchase of the equipment and should, therefore, be treated as such.

## LAW

The provisions of 11 U.S.C. § 365(a) state in pertinent part:

"(a) ... the trustee, subject to the court's approval, may assume or reject any exec-

utory contract or unexpired lease of the debtor.

(g) ... the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

($l$) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition ..."

Under this provision, a trustee or a debtor-in-possession, see, 11 U.S.C. § 1107, may reject any executory contract to which the debtor is a party. In a Chapter 11 case a debtor has until confirmation of the plan to accept or reject a contract. 11 U.S.C. § 365(d). If the debtor rejects a contract, it is deemed to constitute a breach of the contract which occurred immediately prior to the filing of the petition.

The claim which results from the rejection of an unexpired lease is governed by the provisions of 11 U.S.C. § 502 which states in pertinent part:

"(g) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

Under this section, a claim arising from the rejection of an unexpired lease of personal property is limited in the same manner as is a claim for the rejection of an unexpired lease of real estate. See, *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc. (In re Allied Technology, Inc.)*, 25 B.R. 484 (Bkcy.S.D. Ohio 1982). Such limitations are addressed by the provisions of 11 U.S.C. § 502(b) which state, in pertinent part:

(b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such

claim ... and shall allow such claim in such amount, except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease without acceleration, on the earlier of such dates;"

Under these provisions, the lessor of a rejected lease is entitled to a claim for all pre-petition rent due prior to the filing of the petition and to the future rent that would have been paid had the lease not been breached. The lessor's claim for future rent is, however, limited to the greater of one (1) year's rent or fifteen (15%) percent of the total amount which would have been paid over the life of the lease up to a total of three (3) years' rent. The Bankruptcy Code does not require a debtor to honor a claim for any amount of future rent which exceeds these amounts. The Code also, by exclusion, precludes the allowance of a lessor's claim for any other charges which arise under the terms of the contract.

■ In the present case, the Debtors-In-Possession have not yet had a plan of reorganization confirmed by this Court. Accordingly, the period in which to accept or reject contracts has not yet expired. As indicated in *Matter of Computerized Steel Fabricators, Inc.*, 40 B.R. 344 (Bkcy.S.D.N.Y.1984), the rejection of an executory contract requires Court approval, and until such time as the rejection is approved the contract continues in effect. However, as a practical matter, the Debtors-In-Possession have rejected the lease by virtue of their return of the combine to Lyons.

While such procedure is not favored, it would serve no purpose to hold that the contract had not been rejected simply because the Court has not yet sanctioned the rejection. Furthermore, it is anticipated that the plan of reorganization will make a specific provision for the rejection of the lease. Therefore, for purposes of determining the amount of Lyons' claim, the Court will consider the lease to have been rejected.

■ As previously indicated, the parties have agreed that Lyons is entitled to be paid for the post-petition use of the combine. This payment is both authorized by the Bankruptcy Code and is entitled to receive administrative priority treatment. *See, In re Gourmet Gallery, Inc.*, 27 B.R. 912 (Bkcy.E.D.Pa.1983), 2 *Collier on Bankruptcy* 15th ed. ¶ 365.03[2]. It should be pointed out that allowance for this administrative expense is not to be counted against Lyons' claim for future rent. When a debtor rejects an executory contract, it is deemed to constitute a breach of the contract which occurs immediately prior to the filing of the petition. *See,* 11 U.S.C. § 365(g)(1). A lessor's claim arises from the damages which are incurred as a result of a rejection of the lease as of that time. Therefore, Lyons' breach of contract damages must be calculated as though the contract was breached at the time of filing, and cannot be discounted by the claim for the post-petition use of the property. The administrative claim is, however, relevant for the purpose of computing the amount of Lyons' actual damages.

Having determined that Lyons is entitled to assert a claim for both the post-petition use and the rent that was due under the lease at the time of filing, the only remaining question in this litigation is the amount to be allowed for damages resulting from rejection of the lease. This question presents an issue which appears to be one of first impression under the Bankruptcy Code. That question is whether or not the language of 11 U.S.C. § 502(b) is intended to allow a lessor to claim the actual amount of rent which would have been paid under

the contract, or whether the lessor is entitled to claim only the actual damages which result from the rejection.

Under the Bankruptcy Act of 1898, the measure of damages resulting from the rejection of a lessor's lease was the lessor's actual damages. *In re W.T. Grant Co.*, 36 B.R. 939 (S.D.N.Y.1984). This measure was established as a result of the fact that under § 103(a)(9) of the Act, a lessor was entitled to claim damages based upon an anticipatory breach of contract standard. Those damages would be the difference between the rent that would have been paid under the lease and the rental value of the property at the time and place of rejection. Under the Code, however, the language employed in the claims provision which addressed the breach of a lease, 11 U.S.C. § 502(b), apparently states that a lessor is entitled to claim the actual rent which would have been paid under the contract.

The legislative history behind the modification contained in § 502(b) suggests that the change was made so as to protect the interests of both a long term lessor and the other general unsecured creditors in a case. Specifically, the changes were intended to protect the lessor by allowing it to recover a reasonable loss for the rejection of an otherwise enforceable agreement. It would also protect other unsecured creditors by limiting the amount recoverable by a long term lessor whose claim, if not limited, could constitute a disproportionately large percentage of the unsecured claims. *See,* 3 *Collier on Bankruptcy* 15th ed. 502.02[7]. The change does not appear to have been made in contemplation of altering the rule, whereby a lessor is only entitled to claim his actual damages.

■ The foregoing interpretation of the language of § 502(b) also has the effect of supporting the public policy against the recovery of windfall compensation. If a lessor were able to recover the actual amount of rent due under the lease as well as having the property available to it for re-rental, the lessor would receive twice the benefit it had originally contracted for over

the same period of time. If, on the other hand, the lessor's losses are limited to the difference between the amount of rent reserved by the lease and the value actually received over the remaining term, the lessor would only recover that which it would otherwise have received. Stated differently, the lessor would only be able to recover its actual damages. Therefore, it must be concluded that a lessor, whose lease is rejected by a debtor under the Bankruptcy Code, is entitled to claim only those amounts which were due at the time of filing and the actual damages which resulted from the rejection.

■ Having held that a lessor is only entitled to claim actual damages for the rejection of a lease, the Court must next address the question as to the measure by which actual damages will be determined. It is well established in Ohio that a lessor has the duty to mitigate damages when a lessee abandons property prior to the expiration of the lease. *Stern v. Taft,* 49 Ohio App.2d 405, 361 N.E.2d 279 (1976). It is also well settled that the measure of damages for breach of an unexpired lease is the difference between the rent reserved by the lease and the rental value of the property at the time the lease was broken. *See,* 33A Ohio Jur.2d *Landlord & Tenant* § 140. However, this measure may be modified, depending upon the circumstance of the case, so as to be the difference between the rent provided for by the lease and the amount of rent actually received by the lessor from a subsequent lessee during the unexpired term of the first lease. *The Way International v. Ohio Center,* 3 Ohio App.3d 451, 445 N.E.2d 1158 (1982).

In the present case, it appears that subsequent to the filing of the petition, the Debtors-In-Possession remained in possession of the equipment throughout the following planting season. As has already been indicated, Lyons is entitled to an administrative claim for such use. Inasmuch as the breach is deemed to occur immediately prior to the petition, the post-petition use is tantamount to a re-lease of the property. The payment of post-petition rent

compensates Lyons, in part, for rent that would have been received under the lease and must, therefore, be deducted from Lyons' actual damages claim. However, at the end of that growing season, the Debtors-In-Possession returned the property to Lyons. At that point, Lyons had the duty to mitigate its damages by re-renting the equipment or making some other disposition. Although the record is unclear, it appears as though no such disposition has been made. Therefore, the question becomes whether the measure of Lyons' damages should be the difference between the rent reserved by the lease and the rental value of the property at the time it was returned to Lyons, or whether some other measure should be imposed. In making that determination, it should be remembered that the Bankruptcy Code will limit those damages to an amount equal to the greater of one (1) year's rent or fifteen (15%) percent of the rent remaining due under the lease. Accordingly, the Court will continue the Hearing for the presentation of evidence and argument on the issue of the measure of the lessor's actual damages.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that Lyons be, and is hereby, allowed an administrative claim for the pro-rated amount of rent due under the lease for the post-petition period in which the Debtors-In-Possession remained in possession of the equipment.

It is FURTHER ORDERED that Lyons be, and is hereby, allowed a general unsecured claim for all unpaid rent which was due prior to the filing of the Petition.

It is FURTHER ORDERED that Lyons be, and is hereby, allowed a general, unsecured claim for its actual damages resulting from a breach of the lease as of the date of the filing of the Petition. Such claim will be subject to further determination by the Court and the limitations placed upon such claims by the Bankruptcy Code.

It is FURTHER ORDERED that all other claims of Lyons, based upon their leases with the Debtor-In-Possession be, and are hereby, DISALLOWED.

It is FURTHER ORDERED that the Hearing on the Debtors-In-Possession's Objection to the claim of Lyons be, and is hereby, continued until Tuesday, August 6, 1985, at 1:30 o'clock P.M., in Courtroom No. 2, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio. The purpose of that Hearing will be the consideration of evidence and argument regarding the measure of Lyons' damages resulting from the rejection of the leases.