**In re Joseph A. VAUSE, Virgie L. Vause, Debtors.**

**Bankruptcy No. 2-85-03836.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 9, 1987.

Kenneth C. Johnson, Bricker & Eckler, Columbus, Ohio, for Capital Poly Bag, Inc.

Thomas C. Scott, Thompson, Hine and Flory, Columbus, Ohio, for debtors.

## ORDER SUSTAINING OBJECTION TO CLAIM OF CAPITAL POLY BAG, INC.

B.J. SELLERS, Bankruptcy Judge.

This matter is before the Court for determination of the maximum allowable claim which may be asserted by Capital Poly Bag, Inc. ("CPB") for unpaid rent and damages attributable to the rejection of an unexpired lease. CPB's claim, filed in the amount of $72,000.00, was objected to by debtors-in-possession Joseph and Virgie Vause (the "debtors"). Upon CPB's opposition, the matter was heard by the Court and submitted upon post-hearing memoranda of law. For reasons stated herein, the Court sustains the debtors' objection.

The facts in this matter are essentially undisputed. CPB's claim arises from the debtors' rejection of a lease agreement (the "Lease") pursuant to which CPB leased to the debtors two parcels of farm land and buildings in Pike and Jackson Counties, Ohio, comprising approximately 420 acres. The term of the Lease began April 1, 1982 and extended to December 31, 1987. To secure payment of the obligations under the Lease, CPB was granted a second mortgage against real property owned by the debtors. It is uncontested that the value of that mortgaged property exceeds the obligations secured by the two mortgages against it, and that CPB's claim arising from the debtors' rejection of the Lease will, therefore, be a fully secured claim in this case. Additionally, other subsequent events in this case have disclosed that the debtors sublet some portion of the leased property to a third party who has defaulted in payments under that sublease and is currently a debtor in a Chapter 7 bankruptcy case pending before this Court.

The total rent obligation under the terms of the Lease was $201,000. That obligation was payable in an initial installment of $21,000, due December 1, 1982, and in subsequent installments of $36,000, due each December 1 thereafter through December 1, 1987. The rent covenant also included provisions for reductions of rent and imposition of interest under specific circumstances which are not relevant to this dispute. As is common for many farm-related obligations, the payments were structured to follow income received from annual fall harvests and were payable subsequent, rather than prior, to a period of usage.

The debtors filed their joint petition under the provisions of Chapter 11 of the Bankruptcy Code on November 27, 1985. On that same day they filed a rejection of the Lease and a motion seeking approval of that action. On January 14, 1986, the Court approved that rejection. Although some dispute exists as to when the debtors abandoned the entire leased property, that abandonment was in December, 1985, subsequent to the bankruptcy filing.

■ CPB's claim is comprised of two parts: $36,000 is asserted for rent unpaid as of the petition date, and $36,000 is asserted as damages arising from the rejection of the Lease. The debtors' objection to CPB's claim relates only to the portion of the claim asserted for rent unpaid as of the petition date, however, and the appropriate amount to be allowed for damages resulting from the rejection has been reserved for determination at a later time. Specifically, the debtors submit that, under the terms of the Lease and consistent with the provisions of 11 U.S.C. § 502(b)(6)(B), there was no unpaid rent due on the date of the bankruptcy filing which can be claimed by CPB. CPB, on the other hand, requests the Court to distinguish rent "due" from rent "due and payable" and to find that, on the date the bankruptcy was filed, $36,000

was "due" within the meaning of § 502(b)(6)(B) even though such amount was not "due and payable" under the precise terms of the Lease.

Section 502(b)(6)[1] of Title 11, United States Code establishes a ceiling upon the amount a lessor may claim when a debtor-lessee rejects an unexpired lease of real property. That limitation is expressed as follows:

> (b) Except as provided in subsections (e)(2), (f), (g), (h), and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, *except to the extent that* —
>
>      \*    \*    \*    \*    \*    \*
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, *such claim exceeds* —
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) *any unpaid rent due under such lease, without acceleration, on the earlier of such dates;* (emphasis added)

Legislative history relating specifically to the precise wording of § 502(b)(6)(B) is scant. The *Report of the Commission on the Bankruptcy Laws of the United States* ("Commission Report"),[2] in § 4-403(b)(6)(B) used the phrase "an amount equal to the unpaid rent accrued, without acceleration, up to such date." In January, 1975 that Commission Report was reintroduced into the House of Representatives in bill form as H.R. 31.[3] At the same time a response to the Commission Report bill, drafted by the National Conference of Bankruptcy Judges, was also reintroduced into the House of Representatives as H.R. 32.[4] Both of these bills contained the Commission Report's language at § 4-403(b)(6)(B).

Following extensive hearings in the House, a modified bill was introduced into the House of Representatives on January 4, 1977 as H.R. 6.[5] Sometime between the introduction of H.R. 31 and 32 and H.R. 6, the language of the provision relating to claims of lessors arising from the rejection of unexpired leases was changed from "unpaid rent accrued ... up to such date"[6] to "any unpaid rent due".[7] The latter language also appeared in May, 1977 in H.R. 7330 with the addition of "under such lease."[8] After consideration and mark up by the House Judiciary Committee's Subcommittee on Civil and Constitutional Rights, H.R. 6 evolved into H.R. 8200,[9] and the additional phrase from H.R. 7330 remained. "Any unpaid rent due under such lease" also appeared in the parallel bill in the United States Senate[10] and was codified in the Bankruptcy Reform Act of 1978.[11]

---

1. This provision was designated as § 502(b)(7) until amendments enacted as part of The Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub.L. 98–353, redesignated the number for this subsection.

2. H.R.Doc. No. 93–137, 93rd Cong., 1st Sess. (1973).

3. H.R. 31, 94th Cong., 1st Sess. (1975).

4. H.R. 32, 94th Cong., 1st Sess. (1975).

5. H.R. 6, 95th Cong., 1st Sess. (1977).

6. H.R. 31, 94th Cong., 1st Sess. (1975) (§ 403(b)(6)(B)) and H.R. 32, 94th Cong., 1st Sess. (1975) (§ 403(b)(6)(B)).

7. H.R. 6, 95th Cong., 1st Sess. 56 (1977).

8. H.R. 7330, 95th Cong., 1st Sess. 71 (1977).

9. H.R. 8200, 95th Cong., 1st Sess. (1977).

10. S. 2266, 95th Cong., 2d Sess. 73 (1978).

11. Act of Nov. 6, 1978, Pub. L. 95–598, 92 Stat. 2549, Title 1, Ch. 5, § 502(b)(7).

The purpose for the change in language from "unpaid rent accrued ... up to such date" to "any unpaid rent due under such lease" does not appear in the legislative history. Therefore, it is not known if such change was intended to vary the quantum of a landlord's allowable claim for pre-petition rent. No reported cases construing either phrase in circumstances similar to this case have been cited to the Court.

Lacking legislative history or relevant case law, the Court examined and compared the connotations of "accrued" and "due." According to *Black's Law Dictionary* 19 (5th ed. 1979), "accrued" signifies "due and payable", "matured", or "vested"; a cause of action "accrues" only when a suit may be maintained thereon. Similarly, "due" signifies "payable", "owed", or "a settled obligation or liability." Although ambiguity may exist as to the time for payment of an obligation which is "due", without qualifying expressions, "due" is restricted to a debt presently matured and enforceable. *Black's Law Dictionary* 448 (5th ed. 1979). If "unpaid rent" is interpreted as a qualifying expression for "due under such lease" in § 502(b)(6)(B), that qualifier is most meaningful if interpreted as "payable but not paid." That qualifier, therefore, strengthens the argument that "due" includes "due and payable." Thus, the Court believes that no significant difference exists between the language of "unpaid rent accrued", found in the former Bankruptcy Act of 1898 [12] and carried over into the initial bills leading up to the Bankruptcy Reform Act of 1978, and the language of "unpaid rent due under such lease" which first appeared in 1977 and became part of the Bankruptcy Reform Act of 1978, as enacted.

■ Finally, the Court scrutinized the specific terminology used in the rent covenant of the Lease which states:

"Lessee does hereby covenant and agree with Lessor that:

(1) He will *pay* to Lessor, its successors or assigns at the address stated above,

rent in the amount of $201,000 *payable* in installments as follows:

$21,000 *due* December 1, 1982
$36,000 *due* December 1, 1983
$36,000 *due* December 1, 1984
$36,000 *due* December 1, 1985
$36,000 *due* December 1, 1986
$36,000 *due* December 1, 1987"

(Emphasis added)

That language in the Lease makes it clear that "payable" and "due" refer to the same date and that no distinction between those concepts was intended by the parties.

The cases cited by CPB in its initial memorandum opposing the debtors' objection to its claim are not persuasive for its position. Although *In re Steiner*, 50 B.R. 181 (Bankr.N.D.Ohio 1985), relates to a lease providing for annual rental payments, the property leased was personalty which this Court believes is not within the scope of the explicit limitation in § 502(b)(6). In addition, the parties in *Steiner* agreed to a pro ration of rent based upon the lease rental amount for the debtor's post-petition usage of a combine which was the subject of one of the two leases in dispute. The debtors in *Steiner* were in default of lease payments under the terms of the leases at the time their bankruptcy was filed, and the specific issue of rent not paid because it was not yet due and payable under the lease agreements was not before that Court. *In re Stewart's Properties, Inc.*, 41 B.R. 353 (Bankr.D.Hawaii 1984), also cited by CPB, relates only to the issue of appropriate components of a claim for damages for the rejection of a lease as governed by § 502(b)(6)(A), and is, therefore, not relevant to this dispute.

Likewise, the cases of *In re Zienel Furniture, Inc.*, 13 B.R. 264 (Bankr.E.D.Wis. 1981) and *Oldden v. Tonto Realty Corporation*, 143 F.2d 916 (2nd Cir.1944), relate primarily to the application of security deposits to reduce the claim of lessors, and, therefore, do not establish CPB's position in this matter. The Court also believes that cases relied upon by CPB in its post-

**12.** Act of July 1, 1898, Ch. 541, 30 Stat. 544 (now     repealed).

hearing brief [13] bear more specifically upon the issue of whether the entire rental obligation is accelerated at the time a bankruptcy is filed such that portions of the rental obligation not yet due become a claim subject to allowance and discharge.

After consideration of the statutory language, the lack of specific legislative history indicating an expansive or unusual meaning for that language, the usual connotations of "due" and "accrued", the explicit provisions of the Lease and the apparent absence of reported cases construing either phrase favorably to CPB's position in circumstances similar to this case, the Court finds that the language of § 502(b)(6)(B) is unambiguous and specific in its meaning. Even if the "accrued" language from the Bankruptcy Act of 1898 and the Commission Report bill is substituted or construed, the meaning does not change. Therefore, the Court holds that there was no unpaid rent due under the Lease on November 27, 1985, and that, because the debtors surrendered the leased property subsequent to the date of the filing of their petition, the determinative date in this case is that filing date.

Although § 502(b)(6) either intentionally or inadvertently fails to address the apparent inequities resulting from the provisions of a lease rental covenant which is payable in arrears, as are many farm leases and, for a shorter period, as are some commercial leases involving the calculation of percentage rentals, without legislative history or appropriate case law, the Court will not find that such omission was unintentional. Section 502(b)(6)(B) is specific in permitting the claim for unpaid rent to include only "any unpaid rent due under such lease, without acceleration", and, under the terms of the Lease, no unpaid rent existed on November 27, 1985. Rent in the amount of $36,000 was not due and payable until December 1, 1985; and the Lease, prepared by CPB, does not contain any language requiring pro ration or accrual of such rent for days of occupancy. Nor does the language of the Lease make such rent due on one date and payable at a subsequent time. The specific lease terms establish "due" and "payable" on the same dates.

Based upon the foregoing, the debtors' objection to CPB's claim shall be, and the same is hereby, SUSTAINED. CPB's allowed claim in this case shall be restricted to a maximum amount of $36,000, based only upon whatever claim it has arising under 11 U.S.C. § 502(b)(6)(A). No ruling is being made at this time on the actual amount allowable to CPB for that portion of its claim or upon the issue of CPB's entitlement to interest.

IT IS SO ORDERED.

**13.** *Purdy v. Purdy Estate,* 429 Pa. 80, 239 A.2d 375 (1968); *Ryan v. Douglas County,* 47 Neb. 9, 66 N.W. 30, 32 (1896); *United States v. the State Bank of North Carolina,* 31 U.S. (6 Pet.) 29, 8 L.Ed. 308 (1832).