**In re HEALTH AMERICA MEDICAL GROUP, INC., Debtor.**

No. 01–04823–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 16, 2003.

David W. Steen, Tampa, FL, for debtor.

Michael C. Markham, Clearwater, FL, for movant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

### (Doc. No. 330)

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this confirmed Chapter 11 case is a Motion for Summary Judgment, filed by Byron F. Deming (Deming). The Motion is filed in this contested matter, which involves an objection to the allowance of an unsecured claim, filed by Picker Financial Group, LLC (Picker). The claim involved is

Claim No. 122, which was filed as an unsecured claim in the amount of $1,921,162.07.

The events leading up to the Objection under consideration are somewhat complex, and a recap of the procedural as well as the relevant factual events should be helpful. On March 21, 2001, Health America Medical Group, Inc. (Debtor) filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Prior to the commencement of this Chapter 11 case, Picker and Bay Area Medical Group, now known as the Debtor, entered into an "Equipment Lease (With All Schedules)" (Original Lease). Under the Original Lease, Picker leased to the Debtor certain medical equipment. The schedules, each entitled "Equipment Schedule No. ____," were comprised of seven separate schedules constituting "independent leases." Copies of the Original Lease and all schedules were attached to the proof of claim of Picker (Claim No. 56).

On April 23, 2001, the Debtor filed Emergency Motion to Reject Executory Contracts (Doc. No. 48), which included its contract with Picker. On May 16, 2001, this Court entered an Order, granted the Debtor's motion, and the Original Lease was rejected. On May 24, 2001, Picker filed Claim No. 56, asserting a general unsecured claim in the amount of $4,348,553.15, based on rejection damages.

On June 20, 2001, Picker filed Emergency Motion for Payment of Administrative Rent Claim (Doc. No. 82). Picker sought an allowance of administrative rent in the amount of $432,674.10 for post-petition use of the equipment in question by the Debtor, a per diem charge of $3,807.49, attorney's fees of $31,989, and costs of $1,819.83.

Picker's Emergency Motion was scheduled for hearing in due course. However, prior to the scheduled hearing, Picker and the Debtor filed a joint motion and sought approval of a compromise. The Motion, filed on January 9, 2002, was entitled "Motion and Notice of Proposed Compromise of Controversy of Picker Financial Group, LLC's Application for Administrative Rent Claim, Secured Claim and General Unsecured Claim" (Doc. No. 194). The Motion, in paragraph 5, stated:

> The parties propose a compromise of Picker's claims, as set forth in the letter agreement attached hereto at Exhibit "A." (Emphasis added).

The Motion was accompanied by a Letter Agreement, identified as Exhibit "A" (Agreement). The Agreement provided, inter alia, that:

a. Picker would reduce its administrative claim from over $376,482.93 to $75,000;

b. The Debtor would enter into a new lease for certain equipment;

c. The Debtor agreed to execute a promissory note, with payments totaling $359,194.02, for the purchase of miscellaneous equipment; and

d. In the event the contingencies do not occur, Picker may pursue its administrative claim.

It is without dispute that the Debtor did, in fact, enter into a new lease (Current Lease) for certain of the equipment covered by the Original Lease and also agreed to purchase certain miscellaneous equipment from Picker. On February 20, 2002, this Court entered an Order and approved the compromise (Doc. No. 223). On April 29, 2002, this Court entered an amended Order approving the compromise, which was amended only for the purpose of attaching the Agreement as an exhibit to the amended Order (Doc. No. 257). It should be pointed out that the Order in Paragraph 5 provided as follows: The compromise as set forth in the letter

agreement attached to the Motion does not effect Picker's unsecured claim as filed.

On March 4, 2002, Deming moved for reconsideration of the Order Approving the Compromise (Doc. No. 234). This Court denied the motion, but authorized Deming to file an Objection to Picker's general unsecured claim, which was Claim No. 56. On May 6, 2002, Deming filed an Objection to Claim No. 56, contending among other things, that Picker had failed to mitigate its damages by failing to include the amount Picker would receive under the Current Lease. Deming also filed a Motion for Summary Judgment contending that the relevant facts were without dispute and his Objection should be sustained as a matter of law. On August 19, 2002, this Court granted Deming's Motion for Summary Judgment, but authorized Picker to file an amended proof of claim that reflected Picker's mitigation of the rejection damages. On September 10, 2002, Picker filed Claim No. 122, its amended proof of claim, reducing its general unsecured claim from $4,348,553.15 to $1,921,162.07.

In the claim, Picker gave credit to the Debtor as mitigation of its rejection damages based on the Current Lease obtained pursuant to the compromise. Picker calculated its rejection damages pursuant to Section 16 of the Original Lease, which inter alia, provided as follows:

> Upon the occurrence of any Event of Default, Lessor may at its option do any or all of the following: ... (iii) declare all sums due and to become due hereunder for the full term of the applicable schedule(s) immediately due and payable; (iv) recover from Lessee, as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the Casualty Value (as such term is defined in Section 12) due under any Schedule, which amount shall become immediately

due and payable; (v) sell, dispose of, ... use or lease any Equipment as Lessor, in its sole discretion may determine; and (vi) exercise any other right or remedy which may be available to it under the Uniform Commercial Code or applicable law .... In the event that Lessee shall have paid to Lessor the liquidated damages referred to in (iv) above, Lessor hereby agrees to pay to Lessee, promptly after receipt thereof, all rentals or proceeds received from the reletting or sale of the Equipment during the balance of the term of the Schedule for such Equipment (after deduction of all expenses incurred by Lessor), said amount never to exceed the amount of the liquidated damages paid by Lessee. Lessee shall in any event remain fully liable for reasonable damages as provided by law and for all costs and expenses incurred by Lessor on account of such default, including but not limited to all court costs and reasonable attorney fees.

The term "Casualty Value" is defined in Section 12 of the pre-petition rejected lease as:

> "... as of the date of determination, the sum of (a) the aggregate of all rentals for the remaining term of the Schedule relating to such Equipment, discounted to present value at such date at the rate of five percent (5%) per annum, plus (b) the estimated fair market value of such Equipment, at the end of such term, as determined by Lessor in its sole discretion."

(Ex. B. to Claim No. 122).

On July 19, 2001, the Debtor filed its Disclosure Statement and its Plan of Reorganization (Doc. Nos. 117 and 118). Both the Plan and the Disclosure Statement provided for the treatment of approximately $6 million non-insider general unsecured claims, which were treated under Class 18 in the Plan. It is fair to infer that this

amount included Picker's general unsecured claim. On October 19, 2002 and on November 20, 2001, the Debtor filed its supplemental Disclosure Statement and first amendment to supplemental Disclosure Statement, in which it disclosed the settlement of Picker's administrative claim but did not supplement the Disclosure Statement to reflect any compromise of Picker's former general unsecured claim. (Doc. Nos. 160 and 174).

On December 27, 2001, this Court entered an Order and approved the Disclosure Statement, as supplemented and amended. On April 11, 2002, this Court conditionally confirmed the Debtor's Plan of Reorganization (Doc. No. 252). The Order incorporated the provisions of the compromise between Picker and the Debtor, but was silent concerning the treatment of Picker's general unsecured claim. On April 29, 2002, this Court entered the Order Confirming the Debtor's Plan with finality (Doc. No. 262).

Deming filed his Motion for Summary Judgment on November 27, 2002. This Court considered the Motion in due course and on February 3, 2003, entered an Order taking the same under advisement.

It is the contention of Deming that the relevant facts, as appear from this record, are without dispute and, based on the same, his Objection should be sustained and Claim No. 122 should be disallowed. This contention is based on the following propositions urged by Deming.

■ The primary thrust of Deming's challenge of the unsecured claim of Picker is based on two propositions. First, it is contended by Deming that the record is clear and is without dispute that the Debtor and Picker entered into a new lease, the Current Lease, for certain equipment and this was, as a matter of fact, a novation of the contract, which was rejected. There-

fore, Picker has no rejection damage claims, which could be allowed.

■ It is well established and the proposition cannot be gainsaid that while a novation of a contract is well recognized its validity depends on whether or not the new agreement intended to discharge all valid existing obligations under the substituted lease and in fact replaced the old contract. *See In re C.M. Systems, Inc.,* 89 B.R. 947 (Bankr.M.D.Fla.1988); *T & N v. Pennsylvania Ins. Guar. Ass'n.,* 44 F.3d 174 (3rd Cir.1994). Next, although it is not clear from this record, it appears that the Current Lease was only for certain of the previously leased equipment and not all of the equipment. Consequently, the terms of the Current Lease might very well be substantially different from the terms of the Original Lease. For the reasons stated, it is clear and this Court is satisfied that the execution of the Current Lease was not a novation. Thus, it would not be a bar to award damages for rejection of the Original Lease.

■ The next proposition urged by Deming is based on the contention that this Court's Order, which approved the compromise of the administrative claim of Picker, included a compromise of all claims of Picker, including the unsecured claim under consideration. While it is true that the Motion to Compromise filed by the Debtor sought a compromise of Picker's claims [sic] in plural, this might at first blush indicate that it was intended to deal with all claims of Picker. However, this record does not support such conclusion. At the time the Debtor filed the Motion to Compromise, there was no controversy between the Debtor and Picker concerning Picker's general unsecured claim. Moreover, Picker also had, in addition, to the unsecured claim, a secured claim in the amount of $484,500.00, which was a blanket lien on all the assets of the Debtor. In

addition, the Order entered on Deming's Motion for Reconsideration specifically authorized Deming to file an objection to Picker's general unsecured claim No. 56. Had this unsecured claim of Picker been subsumed and included by the compromise, this provision in the Order would have been meaningless and superfluous.

It is without dispute that in the amended Disclosure Statement, filed by the Debtor, the Debtor informed the creditors of the compromise. of the administrative claim, but made no mention of Picker's general unsecured claim. And, the Order conditionally confirming the Plan of Reorganization entered April 12, 2002, was silent concerning the specific treatment of Picker's general unsecured claim, which was part of the unsecured claims in Class 18.

Based on the foregoing, this Court is satisfied that neither the theory of novation nor the claimed effect of a compromise of the administrative claim would present a bar to consider the damage claim of Picker for rejection of the Original Lease by the Debtor.

 In the present instance, Picker relies on Paragraph 16 of the Original Lease, which provides, inter alia, the several different options available to the lessor in the event the lease is breached. Subclause (iv) permits the lessor to rely on the liquidated damage provision in the lease and specifically states that it is not deemed to be a penalty. As a general proposition, whether or not liquidated damages are accepted depends on the intentions of the parties and the nature of the contract. The intention must be determined by an objective standard, particular whether the sum named is not proportionate to the actual damages. The fact that the term "liquidated damages" or "penalty" is used in the contract is not controlling. The prime factor in determining whether or not the sum stipulated to be paid as a result of a breach is to be regarded as liquidated damages or as a penalty, is whether the sum fixed is just compensation for damages resulting from the breach. In order for the liquidated damage provision to be upheld, the damages resulting from the breach must not be readily ascertainable. *Lefemine v. Baron*, 573 So.2d 326 (Fla.1991).

 It is presumed that if the actual damages are difficult to ascertain, fixing liquidated damages is justified. However, when the actual damages are readily ascertainable and the stipulated sum is disproportionate to the fixed amount, it will be regarded as penalty regardless how the provision was characterized in the contract. *North Beach Investments, Inc. v. Sheikewitz*, 63 So.2d 498 (Fla.1953); *Stenor v. Lester*, 58 So.2d 673 (1952). It is inevitable that in determining the amount of damages suffered, the Court must take into account to what extent these damages were mitigated by the lessor.

 According to Deming under the applicable law, which is the law of the State of Ohio, a lessor of a rejected lease is entitled only to claim damages representing those amounts which were due and owing at the time of the filing, that is lease payments accrued but not paid, and actual damages resulting from the rejection. *In re Steiner*, 50 B.R. 181 (Bankr.N.D.Ohio 1985). "Actual damages" may be something less than the "actual amount of rent which would have been paid under the contract." *Id.* at 184–185. For instance, it cannot be gainsaid that the lessor did not suffer any rejection damages if it has released the property in question for more and for the same length or longer period of time than it was leased under the Original Lease. This would be clearly an unac-

ceptable windfall to which the lessor is not entitled.

In the present instance, the rejection damages suffered by Picker are easily ascertainable and requires nothing more than a mathematical calculation to determine the actual damages suffered by Picker. This is so because this record is undisputed that upon rejection, Picker immediately entered into a new lease with the Debtor for some of the equipment and sold some of the equipment to the Debtor. It is quite evident that if the amount to be paid under the new lease (Current Lease) to Picker and the monies realized from the sale of the equipment equals or is in excess of the sum Picker would have received under the Original Lease, had that lease been fully performed, Picker suffered no damages.

Moreover, some of the components of the liquidated damages claimed by Picker have no relationship whatsoever to the actual breach or the damages flowing from the breach, such as late charges and attorney's fees. In sum, this Court is satisfied that the liquidated damage provision of the lease may not be enforced and, therefore, Picker will have to prove with competent evidence the actual damages it suffered as a result of the breach.

In light of the fact that the amount, which Picker will recover from the Current Lease, plus the amount Picker recovered from the sale of some of the equipment, the other terms of the Current Lease, and whether independent payment of the liquidated damages are reasonable are all unclear and in dispute, this Court is satisfied that these issues cannot be resolved by summary judgment.

Deming filed the Motion under consideration and Picker did not file its own motion for summary judgment. While authorities are not in complete agreement whether or not it is appropriate to grant summary judgment to a non-moving party, the majority of courts concluded that it is appropriate to grant summary judgment against the movant even though the opposite party has not actually filed a motion for summary judgment. *See Gerber v. Longboat Harbour North Condominium, Inc.*, 757 F.Supp. 1339, 1341 (M.D.Fla.1991), citing *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388 (5th Cir.1989). *See also Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 751 (7th Cir.1996).

Based upon the foregoing, this Court is satisfied that in the present instance it is appropriate to grant the summary judgment in favor of Picker and against Deming on the issues of the novation and the effect of the compromise, and to grant Picker an entitlement to an unsecured claim but to sustain the Objection as to the amount on Claim No. 122, without prejudice for this Court to conduct a final evidentiary hearing on the amount of Picker's unsecured claim, specifically, the appropriate method to compute the rejection damages which could be awarded to Picker.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment be, and the same is hereby, granted in part and denied in part. The Motion, as filed by Deming is granted in part and the Objection is sustained as to the amount of Picker's unsecured claim. It is further

ORDERED, ADJUDGED AND DECREED that summary judgment is entered in favor of Picker and Picker is entitled to an unsecured claim in proper amount ultimately to be determined by this Court. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary

Judgment be, and the same is hereby, denied as to the computation of rejection damages, and the same shall be set for a Final Evidentiary Hearing to be held on May 7, 2003, beginning at 2:00 p.m. at Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, Florida.