**In the Matter of Joseph A. VAUSE, et al.**

**Bankruptcy No. C–2–87–819.**

United States District Court, S.D. Ohio, E.D.

Nov. 1, 1988.

Thomas C. Scott, Thompson, Hine & Flory, Columbus, Ohio, for debtors.

Kenneth C. Johnson, Bricker & Eckler, Columbus, Ohio, for creditor Capital Poly Bag.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This matter is before the Court on the appeal of creditor Capital Poly Bag, Inc. (hereinafter "appellant") from the Bankruptcy Court's February 10, 1987 order sustaining the objection of debtors Joseph and Virgie Vause (hereinafter "appellees") to appellant's claim for rent unpaid as of the date of appellees' petition for bankruptcy. 72 B.R. 647. The issues before this Court are as follows:

1. whether 11 U.S.C. § 502(b)(6)(B) entitles a lessor of real property to a claim for unpaid prepetition rent where the lease requires rent to be paid annually in arrears and the bankruptcy petition is filed prior to the end of the lease year;

2. whether 11 U.S.C. § 502(b)(6)(B) was intended and should be interpreted in equity to provide for the allowance of equivalent prepetition claims for unpaid rent to lessors under leases payable monthly and leases payable annually, where the lessees have had the equivalent prepetition beneficial use of the real property;

3. whether the Bankruptcy Court's interpretation of 11 U.S.C. § 502(b)(6)(B) denies lessors under real estate leases payable annually in arrears equal protection of the law; and

4. whether the maximum amount of appellant's allowable claim under 11 U.S.C. § 502(B)(6)(A) is $36,000.

### I.

Appellant's claim arises from the appellees' rejection of a lease agreement (hereinafter "Lease") pursuant to which appellant leased to appellees two parcels of farm land consisting of approximately 420 acres with buildings thereon. The term of the Lease began on April 1, 1982 and extended to December 31, 1987. The total rent obligation under the Lease was $201,000. This obligation was payable in an initial installment of $21,000 which was due and paid on December 1, 1982. Thereafter, under the Lease, subsequent installments of $36,000 were due each December 1 through December of 1987. In other words, each payment of rent was to be made annually in arrears, after the annual harvest and sale of crops. The Court notes that a farm lease is unique

in that the lessee is permitted to occupy and make use of the land but not pay for such use until the *end* of the year of occupancy.

Appellees planted and harvested their crops during the 1985 growing season. On November 27, 1985, four days before the Lease rental payment for 1985 was to be paid, on December 1, 1985, appellees filed a joint petition in bankruptcy under the provisions of Chapter 11 of the Bankruptcy Code. Also on November 27, 1985, appellees filed a rejection of the Lease and a motion seeking approval of that action which was approved by the Bankruptcy Court on January 14, 1986. Subsequent to the bankruptcy filing, appellees abandoned the property in December 1985.

Appellant thereafter filed a proof of claim in the amount of $72,000; $36,000 of which was for rent unpaid as of the petition date, and $36,000 in damages arising from the rejection of the Lease. Appellees objected only to appellant's proof of claim for the unpaid prepetition rent. Appellees submitted that, under the terms of the Lease and consistent with the provisions of 11 U.S.C. § 502(b)(6)(B), there was no unpaid rent due on the date of the bankruptcy filing which could be claimed by appellant because rent for the year 1985 was not yet due at that time. Appellant, on the other hand, requested the Bankruptcy Court to distinguish rent "due" from rent "due and payable" and to find that, on the date of the bankruptcy filing, $36,000 was "due" within the meaning of section 502(b)(6)(B) even though such amount was not "due and payable" under the precise terms of the Lease. Appellant maintained, as it does now, that equity demands such interpretation because appellees had full use of the property for almost the entire year.

After careful and thorough consideration, the Bankruptcy Judge, Judge Sellers, held that the language of section 502(b)(6)(B) is unambiguous and specific in its meaning, that the determinative date in the case was the filing date, and that there was no unpaid rent due under the Lease on the date of appellees' bankruptcy filing. In making these determinations, Judge Sellers

considered the applicable statutory language, the lack of specific legislative history indicating an expansive or unusual meaning for the statutory language, the usual connotations of the terms "due" and "accrued," the explicit provisions of the Lease, and the absence of reported cases favorable to appellant's position.

## II. JURISDICTION

Appellees maintain that this Court lacks jurisdiction over this matter because the decision issued by the Bankruptcy Court was not a "final order" under 28 U.S.C. § 158(a). The Court disagrees. Section 158(a) reads as follows:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 57 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a) (1984).

The Court agrees with appellant that the Bankruptcy Court order appealed from, captioned "Order Sustaining Objection to Claim of Capital Poly Bag, Inc.," is a final order for purposes of appeal under section 158(a) because the order conclusively determines a separable dispute over a creditor's claim. The ruling conclusively determined that appellant was not entitled to his separable claim of unpaid prepetition rent in the amount of $36,000. Accordingly, this matter is properly before this Court.

## III.

The first issue presented on this appeal is whether 11 U.S.C. § 502(b)(6)(B) entitles a lessor of real property to a claim for unpaid prepetition rent where the lease requires rent to be paid annually in arrears and the bankruptcy petition is filed prior to the end of the lease year.

Section 502(b)(6) of Title 11, United States Code, establishes a ceiling upon the

amount a lessor may claim when a debtor-lessee rejects an unexpired lease of real property. This limitation reads as follows:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—
>
> . . . .
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

■ Although section 502(b)(6)(B) is the section in dispute in this case, the Court must first look to section 502(b)(6)(A)(i) and (ii) to determine the date upon which we must decide whether there was any unpaid rent "due." Under the statute, the Court must look to the earlier of (i) the date of the filing of the petition; and (ii) the date on which the lessee surrendered the leased property. Appellees filed their joint petition for bankruptcy on November 27, 1985; appellees did not abandon the property until December 1985. Accordingly, the earlier date, and the date to which we look to determine what may have been "due" under the Lease, is November 27, 1985.

Appellant maintains that appellees should not be able to take advantage of a very narrow reading of the Bankruptcy Code which disallows appellant's claim for the beneficial use of its property by appellees before the bankruptcy petition was filed. Appellant contends that under section 502(b)(6)(B) a lessor of real property is entitled to a claim for unpaid prepetition rent where the lease is payable annually in arrears and the bankruptcy petition is filed prior to the end of the lease year. Appellant argues that the meaning of the word "due" as contained in section 502(b)(6)(B) was intended to be synonymous with "owing" or "attributable." According to appellant, unpaid rent "due" as of the petition date is that rent owing for, or attributable to, the prepetition period. The Court disagrees.

A review of the case law cited by appellant indicates that the term "due" has two meanings. The term is sometimes used to express a mere state of indebtedness, in which case an appropriate synonym would be "owing." "Due" is also used to express the fact that a debt has become payable, in which case an appropriate synonym would be "collectable." The Court agrees with appellant that the term "due" cannot be given any categorical meaning because the word has never been given a precise or universal definition.

■ The order of the Bankruptcy Judge in this case was well-written after careful and thorough consideration of all relevant factors and sources. The Court fully agrees with Judge Sellers' analysis and conclusions. The Court wants to emphasize that although the term "due" may be susceptible to different interpretations, the critical terminology in section 502(b)(6)(B) is "due *under such lease.*" As the statute reads, "any unpaid rent due *under such lease, without acceleration....*" 11 U.S.C. § 502(b)(6)(B) (emphasis added). Judge Sellers was clearly correct in referring to the language of the Lease itself in determining what amount appellant was entitled to claim against the bankruptcy estate on a particular date. The Lease provides, in part, as follows:

> Lessee does hereby covenant and agree with Lessor that:
>
> (1) He will pay to Lessor, its successors or assigns at the address stated above,

rent in the amount of $201,000 *payable* in installments as follows:

$21,000 *due* December 1, 1982
$36,000 *due* December 1, 1983
$36,000 *due* December 1, 1984
$36,000 *due* December 1, 1985
$36,000 *due* December 1, 1986
$36,000 *due·* December 1, 1987

Farm Lease at pp. 1–2 (emphasis added). As Judge Sellers noted, the terms "due" and "payable" as used in the Lease refer to the same dates. The Court agrees with Judge Sellers that no distinction between the concepts of "due" and "payable" was intended by the parties.

Additionally, the Lease, as prepared by appellant, fails to contain any language requiring pro ration or accrual of rent for days of occupancy, and fails to make rent *due* on one date but *payable* on a subsequent date.

Accordingly, after a thorough review of the statutory language, it's legislative history, available case law, and the explicit provisions of the Lease, the Court holds that there was no unpaid rent due under the Lease on the determinative date in this case, November 27, 1985. Consequently, the decision of the Bankruptcy Court, to sustain the debtors' objection to the creditors'· claim for prepetition rent, is AFFIRMED.

### IV.

The second issue before the Court on this appeal is whether section 502(b)(6)(B) was intended to be and should be interpreted in equity to provide for the allowance of equivalent prepetition claims for unpaid rent to lessors under leases payable monthly and leases payable annually, where the lessees have had the equivalent prepetition beneficial use of the real property.

The question of whether or not section 502(b)(6)(B) intentionally or inadvertently fails to address apparent inequities resulting from the provisions of a lease which is payable in arrears cannot be determined by a review of the legislative history or available case law because it cannot be determined from these sources whether or not Congress addressed such situations. Although the Court agrees with appellant that such a result may seem inequitable, such a matter is for Congress, not this Court, to correct.

Moreover, the statute specifically calls for examination of the terms of the Lease itself. In this case, appellant did not protect itself by the use of appropriate language from a situation such as this in which it finds itself. Perhaps such a lease could provide that rent is due upon each day of occupancy yet not payable until the end of the occupancy year. As previously stated, the plain language of section 502(B)(6)(B) refers to "any unpaid rent *due under such lease ...*" (emphasis added).

Accordingly, the Court will not interpret section 502(b)(6)(B) to provide for allowance of prepetition claims for unpaid rent to lessors under leases payable annually in arrears even though the lessee has had the equivalent prepetition beneficial use of the property.

### V.

The third issue before the Court on this appeal is whether the Bankruptcy Court's interpretation of section 502(b)(6)(B) denies lessors under leases payable annually in arrears equal protection of the law. Appellant argues that lessors under annual leases should be compensated equally to landlords under monthly leases.

The crux of an equal protection claim is that all persons similarly situated should be treated alike. *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). "Lessors under leases payable annually in arrears" does not describe a suspect classification and equal compensation under leases is not accorded the status of a fundamental right. Under such circumstances, a rational basis for the statute must be found to pass muster under the Equal Protection Clause. However, in this case, the Equal Protection Clause is not relevant because preoccupancy leases are totally different from postoccupancy leases. In preoccupancy leases, lessees are required to pay their rent in advance each

month; in postoccupancy leases, rent is not paid until the express term of occupancy expires. Hence, appellant, as lessor under a postoccupancy lease, is not similarly situated to lessors under a preoccupancy lease.

The Court finds no denial of equal protection in this case.

### VI.

 The final issue presented on this appeal is whether the maximum amount of appellant's allowable claim under section 502(b)(6)(B) is $36,000. Appellant contends that the Bankruptcy Court restricted its claim to $36,000 when appellant is also entitled to interest on that amount.

Appellant's claim was originally comprised of two parts: $36,000 for rent unpaid as of the petition date, and $36,000 as damages arising from the rejection of the Lease. Appellees' objection to appellant's claim related only to the portion of the claim asserted for rent unpaid as of the petition date. Judge Sellers specifically reserved for determination at a later date the issue regarding the appropriate amount to be permitted for damages resulting from the rejection of the Lease. Order Sustaining Objection to Claim of Capital Poly Bag, Inc. at 3. Additionally, Judge Sellers ruled as follows:

> CPB's allowed claim in this case shall be restricted to a maximum amount of $36,-000, based only upon *whatever* claim it has arising under 11 U.S.C. § 502(b)(6)(A). *No ruling is being made at this time on the actual amount allowable to CPB for the portion of its claim or upon the issue of CPB's entitlement to interest.*

*Id.* at 10 (emphasis added).

Accordingly, as stated in Judge Sellers' order, the issue of what may be due appellant under section 502(b)(6)(A) has not yet been addressed by the Bankruptcy Court and is therefore not appropriately before this Court on appeal.

In sum, the Bankruptcy Court's order sustaining appellees' objection to appel-lant's claim for unpaid prepetition rent is AFFIRMED.

IT IS SO ORDERED.